HARRIS B. McKENZIE, Plaintiff, v. WAPPLER ELECTRIC CO., INC., and Others, Defendants.

Supreme Court, New York County, January 8, 1927.

Corporations — action to recover shares of corporate stock which plaintiff claims to have been held in trust for him on merger of corporations — evidence fails to show that stock certificates were actually issued to trustee for plaintiff's benefit — proof does not disclose bad faith on defendants' part in taking over stock — limitation of actions — action based on constructive fraud barred by ten-year Statute of Limitations.

In this action to recover shares of corporate stock and for an accounting as to dividends, plaintiff's claim to a proportionate share of the stock of a corporation, held in trust on a merger of corporations, cannot be sustained where the evidence neither shows that the stock certificates on which the plaintiff predicates his claim were actually issued to the trustee for plaintiff's benefit, nor that the defendants acted in bad faith in taking over the stock of the trustee and issuing in place thereof preferred stock to a person designated by the trustee.

Moreover, the plaintiff, who relies on the constructive fraud of defendants in 1912, upon the distribution of the stock, which he alleges was held in trust for him, is barred, under the ten-year Statute of Limitations, from maintaining this action as to the defendants who were made parties defendant in 1924.

ACTION to recover shares of corporate stock and for an accounting of dividends.

A. Lincoln Lavine [Samuel Conrad Cohen of counsel], for the plaintiff.

Katz & Sommerich [Maxwell C. Katz and Otto C. Sommerich of counsel], for the defendants Frederick H. Wappler, Charles Fayer and Wappler Electric Co., Inc.

Davis, Wagner, Heater & Holton [Charles R. Coulter of counsel], for the defendant Rheinhold H. Wappler.

MAHONEY, J. The evidence satisfies me that on the 24th day of August, 1910, the so-called instrument of trust claimed by the plaintiff to have been executed by W. W. Hoag in favor of the plain-

tiff was actually executed by said Hoag on that date in favor of the plaintiff. The evidence also establishes to my satisfaction that on or about April 1, 1909, there had been issued to the plaintiff a certificate for thirty-three and one-third shares of the $10,000 capital stock of the Synchronous Manufacturing Company. It appears that both the Synchronous Manufacturing Company and the Wappler Electric Controller Company were merged into the Wappler Electric Manufacturing Company in or about June, 1910. Up to that time it would seem that the Synchronous Company had been a sales agent for the Wappler Electric Manufacturing Company. W. W. Hoag was president, and plaintiff the secretary and treasurer. Some time in 1916 the Wappler Electric Manufacturing Company was merged into the defendant Wappler Electric Co., Inc.

The plaintiff contends that, being the owner of thirty-three and one-third shares, or one-third of the capital stock of the Synchronous Manufacturing Company, he became entitled to a proper proportionate share in the stock of the Wappler Electric Manufacturing Company issued by that company in consideration of the transfer to it by the Synchronous Manufacturing Company of the assets and stock of the latter company. Among the provisions of the aforesaid trust agreement, dated August 24, 1910, and upon which plaintiff's cause of action is based, are the following:

" Wʜᴇʀᴇᴀs, the said H. B. McKenzie has caused to be transferred on this date to the said W. W. Hoag all capital stock standing in said McKenzie's name on the books of the Synchronous Manufacturing Company, a corporation under the laws of the State of New York, thereby vesting in said W. W. Hoag practically all of the stock of the Synchronous Manufacturing Company; and whereas, this transfer is made to enable said W. W. Hoag to receive as such stockholder a distribution of certain assets to be acquired by the Synchronous Manufacturing Company consisting of 3,000 shares of the common capital stock of the Wappler Electric Manufacturing Company, a corporation under the laws of the State of New York; and whereas, as between the parties, the said H.·B. McKenzie is the owner of a one-third undivided interest in said stock of the Wappler Electric Manufacturing Company so to be received by the said W. W. Hoag, subject to the conditions hereinafter set forth: * * * Now, therefore, in consideration of the premises, said W. W. Hoag does declare and agree unto and with the said H. B. McKenzie, his heirs, executors, administrators, and assigns: (1) That he holds a one-third undivided interest in the said capital stock, consisting originally of 3,000 shares of the said Wappler Electric Manufacturing Company, but which, after allowances and deductions for indebtedness of every name and

nature having been provided for and. made, actually consists of 2,421 shares thereof, as a trustee for the benefit of H. B. McKenzie, his heirs, executors, administrators, and assigns," etc.

In the complaint it is alleged that by the arrangement for the taking over of the assets of the Synchronous Manufacturing Company and the Wappler Electric Controller Company by the Wappler Electric Manufacturing Company and the issuance of the capital stock of the Wappler Electric Manufacturing Company in payment therefor, it was agreed that the shares of the stock of the stockholders of the Synchronous Manufacturing Company should be held by Wilson W. Hoag for and on his own behalf and by Wilson W. Hoag as trustee for and on behalf of the other stockholders, in this case representing the plaintiff, and that thereupon and by virtue of the arrangement heretofore set forth the Wappler Electric Manufacturing Company did, on or about the 20th of November, 1911, issue its certificate of stock to Wilson W. Hoag as trustee for 960 shares of the common stock of the Wappler Electric Manufacturing Company. The plaintiff claims that the said Hoag induced the plaintiff to permit such certificate to remain in the hands of Hoag as trustee for plaintiff's benefit upon the representation by Hoag that such holding would be so held in order to facilitate the proper financing of the Wappler Electric Manufacturing Company.

The plaintiff claims that this certificate of stock, which is dated November 11, 1911, was issued to Hoag as trustee for plaintiff's benefit, and that while holding such certificate for plaintiff's benefit the said Hoag, without plaintiff's consent and against the plaintiff's interests, returned said certificate to the Wappler Electric Manufacturing Company on or about April 12, 1912, and that the Wappler Electric Manufacturing Company on that date did issue in exchange therefor 600 shares of the common stock of the Wappler Electric Manufacturing Company to the defendant Rheinhold Wappler, a certificate of 300 shares to the defendant Frederick H. Wappler, and a certificate of 60 shares to the defendant Charles Fayer. It appears from the evidence in this case that on or about April 12, 1912, said certificate for 960 shares was returned to the Wappler Electric Manufacturing Company, and that in return therefor the issues of 600, 300 and 60 shares of the common stock, respectively, were made as claimed by plaintiff, and that at such time the individual defendants were all directors and officers of the Wappler Manufacturing Company.

It is the claim of the plaintiff that said certificate for 960 shares was issued to " W. W. Hoag, trustee," and that when the corporation and the individual defendants accepted the return of the

certificate of 960 shares of common stock, and had made out to said individual defendants certificates for 600, 300 and 60 shares, respectively, from said certificate of 960 shares, they were put on their notice and had actual knowledge of the fact that said certificate for 960 shares was held by Hoag as trustee for the plaintiff. The plaintiff, therefore, claims a right to follow up the said issues of common stock which were so made, to possess himself of the same, and to have an accounting against the defendants for any proceeds of said shares by way of dividends or otherwise.

It is the claim of the defendants that not only did they give good consideration for the shares which they got as a result of the breaking up of said certificate for 960 shares, but that they acted in entire good faith; that they were not aware of the alleged trust arrangement between plaintiff and Hoag, and that as a matter of fact they gave up 960 shares of preferred stock of the Wappler Electric Manufacturing Company, paying a dividend of seven per cent, for a corresponding number of shares of common stock that paid no dividend; and that the transaction was entered into by them solely at the request of said Hoag, who at that time was dying, and who did die on June 12, 1912, in order that there might be some income for the support of Mrs. Hoag.

The evidence convinces me that Wilson W. Hoag did not keep faith with the plaintiff McKenzie, and that whereas McKenzie was entitled under the trust arrangement of August 24, 1910, to share in such stock as was actually issued by the Wappler Electric Manufacturing Company for the assets and stock of the Synchronous Manufacturing Company, McKenzie actually never received anything from Hoag nor from the Wappler Electric Manufacturing Company. McKenzie's claim, however, as made in this case, presumes that the certificate for 960 shares of the Wappler Manufacturing Company was held by Hoag as trustee for plaintiff. There is no direct evidence in the case, however, that such was or is an actual fact, or that any specific portion of the stock of the Wappler Electric Manufacturing Company was placed in any one particular certificate to represent McKenzie's stock interest.

The plaintiff claims, however, that the circumstantial evidence in the case readily supports a conclusion that said certificate for 960 shares held by Hoag, " trustee," did actually represent McKenzie's interest, and that such certificate was issued under such circumstances as to justify McKenzie's claim that he was entitled to said 960 shares when the purposes for which the trust agreement of August, 1910, was created no longer existed. It is to be noted from the stock book of the company that apparently under date of July 1, 1910, a certificate for 2,870 shares of the

common stock of the Wappler Electric Manufacturing Company was made out to W. W. Hoag, " trustee." It is not, however, established that such certificate was actually issued. For various reasons, all of which do not appear in the record, at different times subsequent to July 1, 1910, said certificate for 2,870 shares was split up into various certificates representing different quantities of stock.

Under date of November 20, 1911, a certificate for 960 shares was actually issued to W. W. Hoag, trustee, and on said date a certificate of 1,000 shares was issued to W. W. Hoag. The record would seem to indicate that this certificate of 960 shares issued to Hoag, " trustee," and the certificate of 1,000 shares issued to Hoag, came out of the original certificate for 2,870 shares made out to W. W. Hoag, trustee, but never issued to him. It is to be noted, so far as the agreement of trust is concerned, that it is nowhere therein stated that Hoag is to hold any specific number like 960 shares as trustee for McKenzie. The trust agreement as heretofore pointed out provides, so far as Hoag is concerned: " That he holds a one-third undivided interest in said capital stock, consisting originally of 3,000 shares, * * * but which * * * actually consists of 2,421 shares thereof, as a trustee for the benefit of said H. B. McKenzie.. * * * "

In other words, so far as the trust agreement is concerned, the stockholding is declared to be an undivided one, and there is nothing to indicate, so far as the trust agreement is concerned, that any specific 960 shares were bought to be set apart for the plaintiff. It will be observed from an examination of the stock certificate book of the Wappler Electric Manufacturing Company that under date of July 1, 1910, a certificate No. 4 for 2,900 shares was made out to the Synchronous Manufacturing Company. This certificate, signed by both Hoag, as president, and F. H. Wappler, as treasurer, apparently was never actually issued. Certificate No. 13 for 2,870 shares, dated July 1, 1910, made out to W. W. Hoag, trustee, is signed by W. W. Hoag, president, but not by the treasurer, and likewise seems, as heretofore indicated, not to have been actually issued and there is no proof that such certificate was ever actually turned over to Hoag as the stock to which the shareholders of the Synchronous Manufacturing Company were entitled.

The only certificates which appear to have been actually issued to Hoag, for the assets and stock of the Synchronous Company, are the certificates above referred to — certificate No. 19, dated November 20, 1911, for 960 shares to W. W. Hoag, trustee, and No. 20 for 1,000 shares to W. W. Hoag. In the trust agreement of August, 1910, it is stated that the number of shares held by

Hoag " actually consists of 2,421 shares," after making " allowances and deductions for indebtedness of every name and nature."

The defendants on their own behalf gave evidence to the effect that only 1,960 shares were ever actually issued to Hoag individually or as trustee. The trust agreement provides that the 3,000 shares that Hoag was to obtain for the Synchronous shareholders shall be pledged unto the Wappler Electric Controller Company " as collateral security for the payment of a promissory note made by the Wappler Electric Manufacturing Company to the Wappler Electric Controller Company for the sum of $20,000. * * * When said stock is released from said pledge, W. W. Hoag undertakes and agrees to deliver a one-third part thereof, after deducting from the gross amount thereof any number of said shares which may be so sold, assigned or transferred by him as a bonus, unto the said H. B. McKenzie, his heirs, executors or administrators."

From the evidence in the case it would seem that said note of $20,000 was never paid by Hoag or by the Wappler Electric Manufacturing Company, and that arrangements were made by which, instead of said sum, additional preferred stock was given to the shareholders of the Wappler Electric Controller Company. It is, therefore, most difficult to determine, in view of the state of the record, the number of shares to which plaintiff was entitled by virtue of the so-called trust agreement and his holdings in the " Synchronous " Company. I am not satisfied, therefore, that plaintiff has established that there was such an appropriation made by Hoag as to justify the plaintiff in claiming he has established that the certificate for 960 shares issued to Hoag, trustee, was issued for and on behalf of plaintiff. Certainly he was not entitled to receive 960 shares, and it is quite difficult to determine just exactly how many shares he would be entitled to claim from Hoag if the latter were alive and had not breached the trust. He, therefore, has not satisfied me by a fair preponderance of the credible testimony that he has established the claim set forth in his complaint.

It is further to be noted that, on the question of good faith of these defendants, they claim that when they inquired of Hoag as to who the person was for whom Hoag was trustee, he stated to said defendants that he was trustee for Mrs. Hoag. At the trial the defendants' testimony upon this point was corroborated by Mrs. Hoag. She stated that at one time she had given $10,000 to her husband for him to invest in her husband's company, and that she had understood he had done so, but that she was not familiar with the details of the transaction, because she relied upon her husband, who died in June, 1912.

Counsel for defendants, in arguing in support of the contention

that the purchase of said 960 shares by defendant was made in good faith, claim that it is an actual fact that Hoag was trustee for his wife, and that a certificate of the Synchronous Manufacturing Company had actually been issued to Mrs. Hoag for 32 shares of the stock of that company, which would have given her a right to 960 shares of the Wappler Electric Manufacturing Company. The record indicates that 3,000 shares of stock of the Wappler Electric Manufacturing Company were originally allocated to the stockholders of the Synchronous Manufacturing Company. A person holding 32 shares, therefore, of stock of the original Synchronous Manufacturing Company would, under ordinary circumstances, be entitled to 960 shares of common stock of the said Wappler Electric Manufacturing Company.

In support of the claim of the defendants it is pointed out that, under date of April 1, 1909, a certificate No. 10 for 32 shares of the Synchronous Manufacturing Company was actually made out in the name of Theresa Hoag. This certificate bears the conceded signature of H. B. McKenzie, the plaintiff, as treasurer, and the signature of W. W. Hoag, as president. The plaintiff claims that, while it is true he signed such certificate on the date on which it appears that the certificate was issued, such certificate was signed by him in blank, and he claims that the name of Theresa Hoag was subsequently inserted, and that the certificate was never actually issued to Theresa Hoag. I do not believe that the present state of the record would justify me in reaching a conclusion that the name of Theresa Hoag was improperly inserted. Such being the case, it would seem that such certificate, which is now in evidence does, to some extent, at least, substantiate the claim made by these defendants that the certificate for 960 shares was held by Hoag as trustee for his wife.

Under all the circumstances of the case I must hold that this plaintiff has not satisfactorily established that the certificate for 960 shares, upon which he bases his claim, was actually issued to Hoag as trustee for the said plaintiff. Even if I were to assume that the certificate was, as claimed by McKenzie, issued to Hoag, as trustee for plaintiff, I am not satisfied that plaintiff has established the bad faith of the defendants in taking over the shares into which the said certificate for 960 shares was divided. It is true the certificate on its face showed it had been issued to Hoag, trustee. The word " trustee " undoubtedly put the defendants to the same burden of making proper inquiry as to the existence of an actual trust. Their explanation as to what was said by Hoag and as to what was said by Mrs. Hoag is not unbelievable. It is clear that

they gave up good and full consideration in taking over common stock, which did not pay a dividend, for their own preferred stock, which was paying a dividend. I cannot see how they profited by the transaction, and I can see no reason for any conclusion other than that they acted in good faith, and were endeavoring to make some provision for a woman whose husband, a business associate, was in a critical condition as to health.

It is to be noted that whereas, this action was instituted against Rheinhold Wappler in 1920, the action was not instituted against the other defendants until December 1, 1924. The original complaint against the defendant Rheinhold Wappler was held good against a demurrer. Subsequently, the record shows, the other defendants were brought in, and plaintiff's present pleading was served. The defendants interposed defenses to the effect that the action was not commenced within six years from the time when the cause of action alleged in the complaint accrued, or even six years from the time when the plaintiff had actual knowledge of the facts upon which his alleged right to make the demand alleged in the complaint depends, and upon which his alleged cause of action is predicated. The plaintiff made a motion to strike out the defenses so interposed by the defendants. Upon the appeal the Appellate Division, in reversing the order of Special Term as appealed from, stated as follows (215 App. Div. 336, 342): " Furthermore, it is to be noted that the complaint does not allege that the representations made by Wilson W. Hoag were false. Actual deception of plaintiff by representations false when made is not indicated. Constructive fraud rather than actual fraud is plaintiff's reliance. As pointed out by Mr. Justice Lehman in *Hart* v. *Goadby* (72 Misc. 232) the six-year statute does not apply to a cause of action in equity based on constructive fraud. The personal representative of Wilson W. Hoag is not a party to this action."

It, therefore, would seem that, as stated by the Appellate Division and from the pleadings, constructive and not actual fraud is plaintiff's reliance. Such being the fact, and it being the further fact that I am required to hold that it is not established that these defendants acted in bad faith, it would seem that the ten-year Statute of Limitations started to run against these defendants in April, 1912.

After a review of all the evidence, herefore, I have reached the conclusion that the defendants are entitled to judgment. Findings have been passed upon.