## FRANCES B. DOUGHERTY *v.* EDWARD H. BURGER.

Supreme Court, New York County, March 14, 1929.

*H. E. Shirk*, for the plaintiff.

*Burger & Burger* [*W. H. K. Davey* of counsel], for the defendant.

SHERMAN, J. At the conclusion of the trial, for reasons then expressed, the second cause of action was dismissed. The court announced that the testimony of the plaintiff was entitled to no credence whatsoever and that the sole questions that survived were whether or not the written agreement of February 9, 1917, whereunder defendant was to receive a share of the alimony to be awarded to plaintiff if successful in a pending matrimonial action was void as against public policy, and if void whether the plaintiff's right of recovery was barred by the ten-year Statute of Limitations. (Civ. Prac. Act, § 53.) Defendant was acting as plaintiff's attorney. When the agreement between the parties hereto was executed the divorce action pending between the plaintiff and her husband had not been determined. The court had previously awarded a weekly stipend as temporary alimony and negotiations were in progress to fix the amount to be awarded in lieu of permanent alimony to the

plaintiff if successful upon the main issues in the divorce action. Out of a total of $30,000, which was fixed as a gross sum in lieu of permanent alimony, defendant received and retained by virtue of his agreement with plaintiff the sum of $7,500 in payment of his fees as her attorney. Upwards of ten years thereafter this action was commenced on April 26, 1928, to declare void that agreement and to require the defendant to pay over to the plaintiff the sum of $7,500, with interest. Courts permit alimony so that a wife may have that maintenance and support from her recreant husband which the marriage contract imposes. Fees to counsel for a wife may be fixed by the court and the husband required to defray them. Control resides in the court. Where the court awards a counsel fee in a marital action its determination is an adjudication of the amount which the attorney is entitled to receive for his services. (*Turner* v. *Woolworth*, 221 N. Y. 425; *Naumer* v. *Gray*, 28 App. Div. 529.) An agreement between client and counsel to share the alimony money to be obtained from a husband has been declared by the courts of this State to be against public policy because of the tendency of such an agreement to deprive the wife of the provision for maintenance which the court has been careful to award to her. Furthermore, such agreements tend to encourage the continuance of litigation and to prevent the reconciliation of the parties. A wife may not by agreement dispose of an expected alimony award so as to share it with her attorney instead of using it for her own maintenance. (*Matter of Brackett*, 114 App. Div. 257; affd., 189 N. Y. 502; *Matter of Dangler*, 192 App. Div. 237; *Van Vleck* v. *Van Vleck*, 21 id. 272.) Defendant contends, however, that these decisions were reached in cases where alimony was provided to be paid in current weekly or other installments and not in a case where a lump sum was paid in lieu of all future alimony. No authority in this State has been cited in support of this attempted distinction. I can conceive of no good reason why in the one case such an agreement should be forbidden and in the other countenanced. The evils inherent in the one are present in the other. In *Newman* v. *Freitas* (129 Cal. 283; 50 L. R. A. 548) the contract between the wife and her attorney in the divorce suit providing for the payment to the attorney of one-third of the lump sum to be recovered of the husband in that action was held by the California Supreme Court to be void as against public policy. In *Jordan* v. *Westerman* (62 Mich. 170) a similar contract was condemned, the court holding that " public policy is interested in maintaining the family relation. The interests of society require that those relations shall not be lightly severed, and that families shall not be broken up for inadequate causes or from unworthy motives; and where differences have

arisen which threaten disruption, public welfare and the good of society demand a reconciliation, if practicable or possible. Contracts like the one in question tend directly to prevent such reconciliation, and, if legal and valid, tend directly to bring around alienation of husband and wife by offering a strong inducement, amounting to a premium, to induce and advise the dissolution of the marriage ties as a method of obtaining relief from real or fancied grievances which otherwise would pass unnoticed." The agreement here under attack is void as against public policy and the sum of $7,500 retained thereunder on June 30, 1917, should be returned to plaintiff unless her right of action is barred by the Statute of Limitations. Both parties are presumed to have known that the agreement was contrary to public policy. The cause of action was complete when the agreement was made and the money paid. In cases of constructive fraud the ten-year statute has been held to run from the date when the transaction was completed. (*Otier* v. *Neiman*, 96 Misc. 481; *Chorrmann* v. *Bachmann*, 119 App. Div. 146; *Treadwell* v. *Clark*, 190 N. Y. 51; *McKenzie* v. *Wappler Electric Co.*, 128 Misc. 827.) Plaintiff asserts, however, that the Statute of Limitations should not be applied in this case because of the fiduciary relationship between the parties. I have been unable to find any case which prevents the tolling of the statute because of that fact. On the contrary, it has been held that an attorney may plead the Statute of Limitations when sued by his client and thereby defeat the cause of action. (*Stafford* v. *Richardson*, 15 Wend. 302; *Kinney's Executors* v. *McClure*, 1 Rand. [Va.] 284; *Kimbro* v. *Waller*, 21 Ala. 376; *Cook* v. *Rives*, 13 Smedes & M. [Miss.] 328.) There remains the argument advanced by plaintiff to the effect that the Statute of Limitations does not run against an obligation derived from a transaction which contravenes public policy. It is urged that the taint of public policy is such as to preclude such a defense, for if the Statute of Limitations be held to prevent a plaintiff from enforcing liability against defendant, then what was done in defiance of public policy will have received in effect a legal dispensation. This argument, however, ignores the essential purpose and attribute of the Statute of Limitations, which is to bring about repose. That statute applies irrespective of the nature of the cause of action barred. The underlying basis of the statute is to prevent the successful enforcement of stale and antiquated claims no matter what virtue they might have possessed if promptly asserted. The first cause of action is dismissed upon the merits. Submit findings.