484 So.2d 32 (1986)
Margaret Combs MARSTON, Appellant/Cross-Appellee,
v.
Roland Michael MARSTON, Appellee/Cross-Appellant.
No. 84-2410.
District Court of Appeal of Florida, Second District.
January 15, 1986.
Rehearing Denied March 5, 1986.
Stephen W. Sessums, of Sessums & Mason, P.A., Tampa, for appellant/cross-appellee.
J. Bruce Harper, of MacPherson, Harper, Kynes, Geller, Watson & Buford, P.A., Clearwater, for appellee/cross-appellant.
SCHOONOVER, Judge.
Appellant, Margaret Combs Marston, appeals from a final judgment of dissolution of marriage. Appellee, Roland Michael Marston, has filed a cross-appeal. We affirm the trial court in all respects, but find that one issue, whether the court erred in distributing the parties' property, merits discussion.
The parties were married on November 14, 1964, and have two children. Robert, age fifteen at the time of the final hearing, resides with Mrs. Marston, and Christine, an adult, attends college.
*33 The parties initially separated on or about May 15, 1981. After the wife attempted to commit suicide, the husband returned to the marital home in April of 1982. He provided for the family's needs for several months while the wife was hospitalized. The parties again separated in December of 1982. The wife filed a petition for dissolution of marriage on December 20, 1982, and the husband answered and filed a counter-petition.
At the time of the final hearing, the husband was thirty-eight years of age and in good health. The wife was thirty-seven years of age. Although the wife was in relatively good physical health, movement in both of her hands was limited as a result of the suicide attempt, and she was undergoing counseling for her mental condition.
Throughout the parties' nineteen-and-one-half year marriage, except for two short periods of time, the wife was not employed outside the home, and instead devoted her time to being a mother and homemaker. The husband is a certified public accountant. Evidence presented at the final hearing revealed that all of the parties' assets had been acquired during the marriage and that neither party had received any substantial gifts or inheritance from a source outside the marriage.
During the year prior to the final hearing, the husband received gross income in the amount of $120,000 from his accounting services and additional gross income of more than $100,000 from other investments. The parties' net worth was approximately $1,176,000, ninety-eight per cent of which was titled in the husband's name alone. The record does not reveal which portion of these assets was acquired during the time the parties lived together.
The wife testified that the marriage was irretrievably broken because she could not tolerate her husband's extramarital affairs, could not take the verbal and mental abuse that he had been giving her, and believed that she and the children needed more emotional support than they had been receiving from him. She testified that the husband's workaholism had been a contributing factor to the break-up of the marriage. In addition to lump sum alimony, the wife sought $5500 per month in permanent periodic alimony and $500 per month in child support. The husband testified that the wife should receive $3000 per month in alimony and $500 per month for support of the parties' son.
An amended final judgment entered at the conclusion of the proceedings dissolved the parties' marriage and ordered shared parental responsibility, with primary residential care of the child awarded to the wife. The husband was required to pay $500 per month in child support, to maintain coverage of the child on his hospitalization and major medical insurance policy, and to pay all of the child's reasonable medical, dental, optical and psychiatric expenses not covered by the health insurance.
The wife was awarded, as lump sum alimony, the husband's interest in the family home. The home was valued at approximately $90,000. She also received, as lump sum alimony, the contents of the home, $60,000 in cash, sole ownership of her jewelry, and ownership of a mortgage valued at approximately $13,000. The court's order required the husband to make monthly mortgage payments on the home and to pay off the entire mortgage anytime the wife might wish to sell the home. He was also required to purchase for the wife an automobile in an amount not to exceed $15,000, with two older automobiles being traded in on the purchase. In addition to this $195,000 lump sum alimony award, the court awarded the wife $3500 per month as permanent periodic alimony.
As security for payment of the periodic alimony, the husband was required to maintain an insurance policy in the amount of $250,000 until the wife reached the age of fifty, and a minimum amount of $100,000 thereafter. The husband was also required to pay the necessary expenses for the parties' two children to receive a four-year college education equivalent in cost to Stetson University. These expenses were to include, but not be limited to, tuition, room and board, books, other miscellaneous expenses *34 required by the school, medical and dental expenses, clothing allowance, spending money, and travel expenses.[1]
By subsequent order, the husband was required to pay a portion of the wife's attorney fees in the amount of $12,000 and court's costs in the amount of $5344.05. This appeal timely followed.
The wife contends that, in awarding eighty-three per cent of the parties' assets ($981,000) to the husband and only seventeen per cent ($195,000) to the wife, the trial court failed to make an equitable distribution of the assets. The wife claims she should have received approximately fifty per cent of the parties' assets. We disagree. The concept of equitable distribution does not require an equal division of the assets acquired during a marriage. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Dewberry v. Dewberry, 455 So.2d 420 (Fla.2d DCA 1984); Mahaffey v. Mahaffey, 401 So.2d 1372 (Fla. 5th DCA 1981).
In fashioning an equitable distribution of the parties' property, the trial court in this case not only considered the amount of the assets, but the nature of the assets, and all other factors set forth in section 61.08, Florida Statutes (1983). It is undisputed that more than $700,000 worth of the parties' assets were related to the husband's profession as a certified public accountant or to two closely-held corporations in which he held a minority interest. A substantial portion of the remaining assets consisted of real property, of which the husband was not the sole owner.
The husband testified that to divide the assets in kind would be disastrous because all of the assets were held in partnership and were basically minority interests. The main assets were those in his accounting practice, which was strictly valued on how he performed and had nothing to do with dividends. His interest in the closely-held corporations did not produce net profits. Accordingly, were the wife to be awarded an interest in them, she, as a minority shareholder, would receive no income from them. The husband opined that the wife would be put in a position of getting into a minority "squeeze-out" with the partners if she were awarded a property interest in the assets. The trial court evidently accepted the husband's opinion in this regard.
We cannot say, considering the nature of the husband's assets and the apparent consequences of their sale or other disposition, that the amount of lump sum alimony awarded in this case was an abuse of the trial judge's discretion. See Mahaffey (where parties' net worth totalled $1,441,782, lump sum award of $200,000 augmented by permanent periodic alimony of $1100 per month, held not an abuse of discretion due to nature of property); see also, Sever v. Sever, 467 So.2d 492 (Fla. 2d DCA 1985). Although we might have made a different award to the wife, we must recognize the superior vantage point of the trial judge and must apply the reasonableness test to determine whether the trial judge abused his discretion. Canakaris. Because the lump sum award in this case was augmented by a substantial amount of permanent periodic alimony, we conclude that the award was within the trial judge's discretion. Walter v. Walter, 464 So.2d 538 (Fla. 1985); Canakaris; Mahaffey; see also, Berger v. Berger, 464 So.2d 649 (Fla. 4th DCA 1985).
Although the wife requested $5000 per month in permanent alimony, the record reflects that during the parties' long period of separation, the wife was able to maintain the standard of living enjoyed during the marriage on the sum of $2500 per month in addition to $500 in child support. The court awarded her $1000 more than this amount, apparently to augment the amount of lump sum alimony. The *35 wife also received assets from which additional income will be earned. The wife, accordingly, has not shown that she will pass from prosperity to misfortune as a result of the final judgment. On the contrary, the record reflects that she will be able to live in substantially the same manner in which she was accustomed during the marriage. We, accordingly, affirm. See Berger; Diprima v. Diprima, 435 So.2d 876 (Fla. 5th DCA 1983), petition for rev. denied, 447 So.2d 886 (Fla. 1984).
AFFIRMED.
HALL, J., concurs.
GRIMES, A.C.J., dissents with opinion.
GRIMES, Acting Chief Judge, dissenting.
The question before us is the one which so often confronts reviewing courts in dissolution proceedings: At what point should a trial judge's distribution of marital assets be deemed an abuse of discretion? There is no appellate court which has endeavored to set an outer limit in terms of percentages to be applied in all cases, and I do not suggest that we do so in this case. However, under any standard, I am convinced that the 83%-17% division of marital assets in this case cannot be viewed as an equitable distribution. See Berger v. Berger, 464 So.2d 649 (Fla. 4th DCA 1985) ($270,000 distribution to wife from marital assets of $1,250,000 deemed insufficient); Grimmett v. Grimmett, 425 So.2d 545 (Fla. 4th DCA 1982) (75%-25% distribution of marital assets held to be abuse of discretion).
Rather than being based on need, the doctrine of equitable distribution was devised to compensate each spouse for his or her contribution to the marriage. Claughton v. Claughton, 393 So.2d 1061 (Fla. 1980). Therefore, ample provisions for permanent alimony cannot offset an inequitable distribution of marital assets, particularly where, as here, the wife, who is thirty-seven years old, will completely lose her alimony should she ever remarry. Admittedly, it would have been counterproductive for the court to award the wife a portion of the husband's minority business interests, but the husband owned other investments which were proper subjects for lump sum alimony. Moreover, the court could have ordered some of the lump sum alimony to be payable over a period of years in order to lessen its impact upon the husband.
I would reverse the distribution of marital assets and remand for a reallocation.
NOTES
[1] Because the husband's cross-appeal relates only to the court's award of attorney fees, we are not called upon to decide the validity of these provisions requiring the husband to maintain life insurance as security for permanent periodic alimony and to pay the children's college expenses after they reach the age of majority. See McClung v. McClung, 465 So.2d 637 (Fla. 2d DCA 1985); Grapin v. Grapin, 450 So.2d 853 (Fla. 1984).