526 So.2d 95 (1987)
Shelly Gay Brown SHEPHERD, Appellant,
v.
Patrick P. SHEPHERD, Appellee.
No. 4-86-2703.
District Court of Appeal of Florida, Fourth District.
December 2, 1987.
Rehearing Denied January 12, 1988.
*96 Peggy Rowe-Linn of Law Offices of Peggy Rowe-Linn and Ronald Sales of Law Offices of Ronald Sales, P.A., West Palm Beach, for appellant.
Alfred J. Horowitz of Horowitz & Rolnick, Fort Lauderdale, for appellee.
GLICKSTEIN, Judge.
The former wife appeals final judgment rendered in a marriage dissolution action. We affirm in part, reverse in part, and remand.
Appellant married appellee in 1981, when she, a real estate associate, was 21 and he, a dentist, was 41. The parties lived together for about a year before they were married, and separated in 1985. A few weeks before the marriage, Dr. Shepherd conveyed his interest in three parcels of land to himself and his bride-to-be, as tenants in common with right of survivorship, by warranty deed. The parcels were the marital home, a vacant lot, and the office property in which his practice was housed.
Appellant contended these interests were conveyed to her as a gift. The husband testified no gift was intended; rather the transfer was made on the future wife's advice through an attorney she employed, purportedly to simplify estate planning. The court found in its final judgment that the husband's testimony reflected the actual facts.
The principal provisions of the judgment were as follows:
1. The husband was entitled to a special equity in the real property.
2. The wife was to receive 2 years of rehabilitative alimony in the amount of $2,000 per month.
3. The husband was to pay the wife's accountant fees, and a total of $12,000 in reasonable attorney's fees, with a credit for $2,500 already paid.
4. The wife was to keep her own IRA, her birds, worth approximately $2,000.00, her automobile and the husband's IRA worth about $6,200.
5. The husband was to keep the household furnishings and contents, his car, his practice and his cash on hand.
6. The husband was to pay all the couple's credit card debts and potential IRS *97 and Commonwealth of Kentucky tax claims against him.
7. Each was to be responsible for the debt on the vehicle (s)he kept.
There was evidence before the court that the real property parcels had appreciated considerably in value during the marriage, as had the husband's dental practice, his interest in a partnership, and his interest in his pension plan.
The points on appeal, restated are:
I. Whether the trial court erred in awarding the husband a special equity interest in real property that was greater than the interest he held at the time of the marriage. We conclude it did not.
II. Whether the trial court erred in failing to award the wife a equitable distribution of any of the accretion in value of marital assets that occurred during the marriage. We conclude it did.
III. Whether the trial court erred in awarding the wife less than a reasonable attorney's fees and all costs, where the husband offered no evidence on the issue. We conclude it did, in light of our determination of the second issue.

I

HUSBAND'S SPECIAL EQUITY
In essence the wife argues that because the husband had transferred to her a tenancy in common interest in three parcels of real property some three weeks before the marriage, the husband's special equity in those parcels could not extend to 100% of the property rights. This argument stands on the foundation of case law statements that a special equity is a vested interest in property that is either "brought into the marriage or acquired during the marriage because of contributions of services or funds over and above normal marital duties." Antonini v. Antonini, 473 So.2d 739, 741 (Fla. 1st DCA 1985) (quoting Canakaris v. Canakaris, 382 So.2d 1197, 1200 (Fla. 1980)). The party claiming a special equity has been said to have the burden of demonstrating his/her equitable interest to the exclusion of a reasonable doubt. Id. (citing Lindley v. Lindley, 84 So.2d 17, 20 (Fla. 1955)).
We think Antonini reads more into Lindley than is there, or that appellant takes the latter principle out of context. The property at issue in Lindley consisted of two automobiles previously owned by a family partnership involving the wife's father, his children, and the husband, but transferred together with title certificates to the husband individually when he gave up his partnership interest. In that context it was stated that the wife, who claimed joint ownership, had, but failed to meet, the burden of showing that she had acquired a legal or equitable interest in the automobiles, to the exclusion of a reasonable doubt. Even if the standard stated in Lindley applies in the instant case, the standard of review is the presence of competent, substantial evidence.
Appellant says that because of the title transfer as to three pieces of real property that took place before the marriage, the husband could claim only his tenancy in common interest as special equity. By implication, the wife is saying that she brought her tenancy in common interest in those parcels into the marriage with her, and therefore should retain those interests at dissolution. This reading of the law can be correct only if the language of Canakaris and other cases is read mechanically. The result of such a reading is that a transfer of property rights in contemplation of marriage is to be handled differently from a similar transfer at the time of marriage or after the wedding ceremony. In the former situation, says the wife, each of the parties gets to keep the interest he or she had as a result of the premarital transfer; albeit when there has been a transfer of property after the parties were already married, it is possible at marriage dissolution for the transferring parties to show there was no donative intent and prove a special equity. The law cannot be so nonsensical. Why would society make a purported premarital "gift" sacrosanct, when it allows the transferor to show otherwise if the "gift" was made during the marriage?
*98 The husband rebuts the wife's argument by citing Ward v. Ward, 476 So.2d 1292 (Fla. 4th DCA 1985), and cases cited therein. In Ward it was held that the wife's mere conjecture that the husband may have intended a gift, in the face of his contrary assertion, could not overcome the husband's special equity in the condominium he purchased entirely with money he earned before the marriage. Ward differs factually from the instant case in that there the transfer of title apparently took place after the pair married. However, a quote in Ward from Brown v. Brown, 429 So.2d 846, 847 (Fla. 4th DCA 1983), quoting in turn Ball v. Ball, 335 So.2d 5, 7 (Fla. 1976), states law which seems to apply regardless of the timing of such a title transfer. The key statement is "that a special equity is created by an unrebutted showing ... that all of the consideration for property held as tenants by the entireties was supplied by one spouse from a source clearly unconnected with the marital relationship." The Ball court went on to say that absent contradictory evidence that a gift was intended the property should be awarded to the transferring spouse as if he created the tenancy solely for survivorship purposes during coverture.
We do not see why the principle quoted verbatim above should not apply equally when the title transfer has been prior to the marriage and the form of ownership interest that of tenancy in common. The key is, whose money acquired before the marriage bought the property, and can the wife prove that the husband intended a gift of the undivided half interest. The husband here testified that the wife persuaded him it would be simpler to provide for his children in the event of his death if the property were fitted in the manner she recommended, and that he did not intend a gift to her. The court had a right to credit this over the wife's assertion that the transfers were a gift.
Appellee also points out that Ingram v. Ingram, 379 So.2d 955 (Fla. 1980), on which appellant relies because it rejects a special equity for the husband, does not state directly or indirectly that where title to property was acquired before a marriage the other marriage partner cannot, as a matter of law, have a special equity. In Ingram the wife made the down payment on the property some time before the marriage, and both parties apparently made contributions to the house payments during the marriage. The husband was not entitled to a special equity because the trial court found there was none and the intermediate court had failed to find that this was an abuse of discretion. One may reasonably surmise there was insufficient proof the contributions made by the husband to the house payments came from outside the marital resources.
Duncan v. Duncan, 379 So.2d 949 (Fla. 198p), like Canakaris, speaks of the discretion of the trial court in deciding such matters as this. Duncan also inveighs against creating inflexible rules that would unduly restrict the trial court in determining what is equitable and just. Id. at 951.
It would be unwise to set up a different rule from that usually applicable, merely because the title transfer took place three weeks before the marriage ceremony. The trial court did not abuse its discretion when it determined the husband had a special equity in the entire property interests in the three parcels in which he had changed the form of ownership to tenants in common with right of survivorship together with his then wife-to-be.

II

ABSENCE OF EQUITABLE DISTRIBUTION OF MARITAL ASSETS
The wife claims there was no equitable distribution whatever, and points out that there had been a considerable increase in the value of certain substantial marital assets during the marriage. The husband responds there was definitely marital property awarded to the wife and other marital property awarded to the husband, and that the court just did not refer to these awards as equitable distribution.
The husband points out that the wife received from marital assets the IRA in her *99 name, the husband's IRA valued at $6,200, the birds worth $2,000, and the equity in her automobile. The husband received the rest  much of it unidentified  but was to be responsible for debts on credit cards and for tax claims owed to the IRS and to Kentucky. Thus, urges the husband, the wife may contest the adequacy of the share awarded her, but is incorrect in saying there was no equitable distribution.
The husband urges it is reasonable that the wife receive a minor part of the marital assets because her contribution to the marriage could be viewed, based on the evidence, as having been slight; that the court could have credited the husband's and the office manager's testimony that the wife contributed very little in the way of helping at the dental office; that the court knew the marriage endured only about 4 1/2 years, and that there were no children of the marriage; and that the court could also have believed the husband's testimony that the wife was not much of a wife and did little or nothing to manage the household or care for the husband's two children.
The trial court has broad discretionary authority to do equity between the parties to a dissolution action by apportionment of assets. Tronconi v. Tronconi, 466 So.2d 203, 205 (Fla. 1985). The result of equitable distribution need not be approximately equal shares of the property acquired during the marriage, Marston v. Marston, 484 So.2d 32 (Fla. 2d DCA 1986), unless the testimony shows the parties have shared equally in the responsibilities and benefits of the marital relationship, see, e.g., Grimmett v. Grimmett, 425 So.2d 545, 547 (Fla. 4th DCA 1982). More usually, where the parties have not decided between them by explicit agreement how the marital assets should be divided, the court makes a determination based on an examination of the actual contribution and role of each partner during the marriage. Id. at 546. See also Claughton v. Claughton, 393 So.2d 1061, 1062 (Fla. 1980).
Appellee shows us that in Marston v. Marston, 484 So.2d 32 (Fla. 2d DCA 1986), an award to the wife of 17 percent of the parties' assets after a 22 year marriage was found to be within the trial court's discretion, the opinion indicating that in making an equitable distribution the trial court may consider all the factors set forth in section 61.08, Florida Statutes. Id. at 34. Section 61.08 specifically refers to those economic factors which are supposed to be considered in determining a proper alimony award. These include the standard of living established during the marriage; the duration of the marriage; the age and physical and emotional condition of each party; the financial resources of each party; the contribution of each party to the marriage, including but not limited to services rendered in homemaking, child care, education and career building of the other party; when applicable, how long it will take for a party to become equipped for appropriate employment, and any other relevant factor.
Having considered all of the foregoing, and notwithstanding the short duration of this marriage and the relatively small contribution the former wife may be perceived to have made to it, we conclude the wife was short changed. There was considerable appreciation of the real property during the marriage as well as the dental practice; and the property was carried by marital income. Further, the final judgment is entirely silent about equitable distribution and fails to mention the husband's pension fund and his partnership interest.
Van Boven v. Van Boven, 453 So.2d 937 (Fla. 4th DCA 1984), and Smith v. Smith, 487 So.2d 339 (Fla. 4th DCA 1986), stand for the principle that it is error for the trial court not to consider the equitable distribution of assets acquired during the marriage. It is further stated that if the trial court concludes that no equitable distribution is appropriate, the court should make findings justifying lack of such a provision. We remand for determination of the wife's appropriate equitable distribution. The trial court should feel free to receive further evidence or arguments from the parties on this matter if it finds this desirable.

*100 III

LESS THAN REASONABLE ATTORNEY'S FEE AWARD
The wife's expert witness testified that a reasonable fee for the legal work performed for the wife was between $16,000 and $25,000, with the result obtained to be taken into account. He said the attorney did 65 hours' work at a $250 hourly rate. The court awarded $12,000.
The wife contends that in the absence of expert testimony on the side of the husband, it was an abuse of discretion for the court to award to a wife whose ability to pay the court itself thought was negligible an amount below the range stated as appropriate by the wife's expert witness. She cites two primary authorities: Larsen v. Larsen, 429 So.2d 725 (Fla. 3d DCA 1983) ($14,000 fee too low where experts on both sides estimated value of legal services at $20,000 to 40,000, albeit under Canakaris trial court in such a case has wide discretion in setting attorney's fees); Ortiz v. Ortiz, 211 So.2d 243 (Fla. 3d DCA 1968) (where evidence indicated maximum attorney's fee award of $12,500, chancellor could not award $15,000; although chancellor may apply his own experience and familiarity with the case, the amount fixed must be supported by competent substantial evidence).
It is also stated in Larsen that according to Oncay v. Oncay, 183 So.2d 878 (Fla. 3d DCA 1966), the trial court is not ordinarily bound by the expert testimony. In Oncay, an award of $700 in attorney's fees when two expert witnesses had testified that fees of $2,400 to $5,000 would be reasonable. Oncay cites, among other cases, Chaachou v. Chaachou, 135 So.2d 206 (Fla. 1961), for the principle that "[t]he amount of attorney's fees to be awarded is a matter largely within the sound judicial discretion of the chancellor, and his determination will not be disturbed unless found to be grossly inadequate." Id. 183 So.2d at 880. In Oncay the appellate court said the fees awarded were not grossly inadequate when the findings of the court, the services rendered and the financial ability of the parties to respond were taken into consideration.
Here the court made a finding that the wife could not afford to pay the attorney's fees she incurred, and that the husband could. The court then held that the wife's counsel was entitled to a fee for 65 hours of reasonably connected services, at an hourly rate of $175 per hour, but also states the amount as $12,000. This amount is not the correct result of multiplying the number of hours times the hourly rate, which would be $11,375. However, there may be more than a mere mathematical error. There is no cross appeal on this point; but on remand, the trial court should clarify or explain this.
There are dissolution cases in which the appellate courts have approved a finding of fewer reasonable hours than claimed by the attorney or estimated by an expert but we have failed to find discussion of reduced hourly rates in such opinions. The expert here indicated that the result obtained should be a factor, and it is true that from the wife's viewpoint the result is hardly the cause of great joy. However, case law indicates the result obtained should have little or no influence where one spouse is to meet the other's attorney's fee obligation in a dissolution action. Valparaiso Bank & Trust Co. v. Sims, 343 So.2d 967 (Fla. 1st DCA 1977). See also Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).
To what extent Rowe makes earlier dissolution case law about award of attorney's fees under section 61.16, Florida Statutes obsolete is not always clear. As to the factor "result obtained," Rowe excludes it from the determination of the hourly rate, but lists it as a possible independent factor for reducing the fee. It is not clear whether the latter applies to dissolution cases, albeit Rowe appears to speak to all attorney fee awards that are pursuant to statute.
Here it appears there is no Rowe problem as to the making of a finding of both reasonable rate and reasonable number of hours; and we can assume there was no application of an enhancement or reduction factor. See Rowe and Boyle v. Boyle, 485 So.2d 879 *101 (Fla. 2d DCA 1986). What remains a question, besides the calculation error, is how the court arrived at an hourly rate that differs from the expert's estimate. Rowe calls for the party seeking the fee to establish the prevailing market rate. Where that party presents expert testimony as to this and the opposing party presents none, is the court bound by the evidence? Rowe states the court should assume the fee will be paid irrespective of the result, and should take into account all the DR2-106 factors other than time and labor required, novelty or difficulty of question, result obtained, and whether the fee is fixed or contingent. 472 So.2d at 1150-51. This litany leaves (1) the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that taking on this employment will close off other employment of counsel; (3) the local customary rate for similar services; (4) the amount involved; (5) time limitations imposed either by client or circumstances; (6) nature and length of the professional relationship; (7) experience, reputation and ability of the lawyer whose fee is to be awarded.
Had we affirmed across the board and given the broad discretion generally allowed the court in a dissolution case, we would have concluded that the trial court here applied these factors and acted within its discretion when it concluded the hourly rate should be less than that named by the expert and urged trial judges to include a short explanation in their orders of how they came to a lower hourly rate than that stated by the expert as appropriate, when they do so. This would facilitate determining whether the result was within their judicial discretion. However, we have concluded the wife was shortchanged; accordingly, we reverse the award of attorney's fees and costs and remand with direction to redetermine same upon determination of equitable distribution to the wife.
DELL and GUNTHER, JJ., concur.