GROSS, Judge.
John and Patricia Heim were married on September 15,1992. On the day before, they executed a prenuptial agreement. In paragraph six of the agreement, John promised to pay Patricia $100,000 “in the event of the divorce or separation of the parties which promise Patricia Mohler requested before she would sign this agreement.” Paragraph 4 of the agreement provided that the $100,-000 payment was
subject to modification in the event that the'circumstances of the parties change substantially from the financial positions of the parties disclosed in connection with this agreement as Schedule A and Schedule B.
Schedule A disclosed that Patricia owned portions of five pieces of real estate, with $406,000 in equity, and $108,500 in other assets, for a total net worth of $514,500. Schedule B indicated that John owned three real properties, with $195,000 in equity, and had $463,717 in other assets, comprising a net worth of $658,717.
During the marriage, John sold two of his premarital properties and used the money to purchase the marital home on Cavendish Road and two condominiums on Chevy Chase Drive, all in Boca Raton, Florida. All three of these properties were titled in John and Patricia’s names, as tenants by the entireties. At trial, both parties claimed a special equity in the three properties; John because he had provided the money to purchase the real estate, and Patricia because of the work she had done on the properties and the bargain price she had obtained from her son, from whom the couple had purchased one of the condominiums.
The trial court denied all claims for a special equity, finding that neither party had worked on the properties “above and beyond the course of any normal duty to care” for them. We affirm this aspect of the trial court’s judgment. As to the claim of a special equity based on their financial contributions to the properties, the trial court held that “both parties failed to prove beyond a reasonable doubt that they did not intend to make a gift to the other party of one half of such properties.” We reverse this portion of the trial court’s ruling, since it appears that the trial court held the parties to a higher burden of proof than the law requires.
The three Boca Raton properties fall squarely within the provisions of section 61.075(5)(a)5, Florida Statutes (1997), which provides:
All real property held by the parties as tenants by the entireties, whether acquired prior to or during the marriage, shall be presumed to be a marital asset. If, in any case, a.party makes a claim to the contrary, the burden of proof shall be on the party asserting the claim for a special equity.
Construing this statutory language, the supreme court has written that
the statute creates a presumption that en-tireties real estate is marital property regardless of who paid for it. The party claiming a special equity and seeking to have the property declared a n'onmarital asset now has the burden of overcoming this presumption by proving that a gift was not intended.
Robertson v. Robertson, 593 So.2d 491, 494 (Fla.1991). Robertson recognizes that section 61.075(5)(a)5 creates a presumption affecting the burden of proof. See §§ 90.302(2), 90.304, Fla: Stat. (1997). To overcome the statutory presumption, Robertson says nothing about imposing the higher burden of proof appropriate for a criminal case. Ml references in the opinion suggest that the party claiming a special equity must prove that “no" gift was intended.” Nothing in the statute suggests that it was imposing a burden of proof greater than that required in the typical civil case— proof by the greater weight of the evidence. Absent some legislative direction to the contrary, we are reluctant to complicate the job of a trial court and require different quanta of proof for different issues in Chapter 61 proceedings. To overcome the section 61.075(5)(a)5 presumption, a party need prove only by the greater weight of the evidence that a gift was not intended.
Such a holding is consistent with prior decisions of this court. In a case decided prior to the enactment of section 61.075(5)(a)5, this court rejected the conten *1240 tion that a special equity in a marital residence had to be proven “beyond a reasonable doubt.” Dix v. Dix, 400 So.2d 1294 (Fla. 4th DCA 1981). More recently, in Howes v. Howes, 613 So.2d 551, 552 (Fla. 4th DCA 1993), we described the mechanics of the section 61.075(5)(a)5 presumption as placing the burden “on the husband to show that he was entitled to a special equity,” without reference to a higher burden of proof. In Knecht v. Knecht, 629 So.2d 883, 886 (Fla. 3d DCA 1993), the third district reversed a trial court’s finding of a special equity, noting that pursuant to Robertson his conclusion was not “supported by the greater weight of the evidence.” [1]
On a different issue, the trial court upheld the validity of the prenuptial agreement and ordered the husband to pay his wife $100,000 out of marital assets.[2] Nothing in the final judgment addresses the husband’s claim that his obligation to pay $100,-000 should be modified pursuant- to paragraph 4, because the circumstances of the parties had changed substantially from that described in the schedules attached to the prenuptial contract. The attachments to the agreement showed the combined net worth of the parties to be $1,173,217 at the time of the marriage— $658,717 for the husband and $514,500 for the wife. It is undisputed that the husband disposed of two New Jersey properties, comprising $130,000 of his equity listed in the prenuptial agreement, to buy the Boca Raton properties. The final judgment found a combined net worth of $712,177— $171,377 in the husband’s nonmarital assets, $300,000 in the wife’s nonmarital assets, and $240,800 in marital property. After the distributions required in the final judgment, the husband had a net worth of $191,777, less than 30% of the net worth disclosed in conjunction with the. prenuptial agreement. At least $130,000 of his net worth went to create the $250,000 in equity on the three Boca Raton properties. On remand, the trial court must rule on the application of the modification provision of paragraph 4 of the prenuptial agreement. Assuming that the net worth figures in the final judgment are correct, if the court rejects the husband’s claim of a special equity, such a decision would require a finding that the circumstances of the parties had changed substantially -from “the financial positions ... disclosed in connection” with the agreement, such that some modification of the $100,000 payout would be appropriate.-
The final judgment is affirmed in part, reversed in part, and remanded.
STONE, C.J., and FARMER, J., concur.

. Knecht v. Knecht, 629 So.2d 883 (Fla. 3d DCA 1993) appears to conflict with Smith v. Smith, 597 So.2d 370 (Fla. 3d DCA 1992), which holds that a section 61.075(3)(a)5 presumption can be overcome only by evidence establishing beyond a reasonable doubt that no gift was intended. As authority for this proposition, Smith relies on Lindley v. Lindley, 84 So.2d 17, 20 (Fla.1955), a case decided well before the enactment of the statute here at issue. In Shepherd v. Shepherd, 526 So.2d 95, 97 (Fla. 4th DCA 1987), we suggested that the scope of Lindley was narrow and that the case is properly confined to its facts.

. The only marital assets identified in the final judgment were the three Boca Raton properties. The court valued these assets at $240,800 after deducting some liabilities. The judgment allocated the wife's portion at $220,400, which included the $100,000 under the prenuptial agreement plus one-half of the equity in the marital properties ($120,400).