343 So.2d 967 (1977)
The VALPARAISO BANK & TRUST COMPANY, As Administrator C.T.A. of the Estate of Coleman L. Kelly, Deceased, Appellant,
v.
Mattie M. SIMS, Appellee.
No. AA-386.
District Court of Appeal of Florida, First District.
March 29, 1977.
*969 Johnny A. Fortune, Estergren, Fortune, Anchors & Powell, Fort Walton Beach, for appellant.
Louis K. Rosenbloum and R.P. Warfield of Levin, Warfield, Middlebrooks, Graff, Mabie, Rosenbloum & Magie, Pensacola, for appellee.
SMITH, Judge.
The Valparaiso Bank, administrator of the estate of Coleman L. Kelly, deceased, appeals from an order of the Okaloosa County circuit court awarding appellee Mattie (Kelly) Sims, former wife of the decedent, $50,000 for the payment of fees for the services of her lawyer in this divorce proceeding, which antedates Florida's no-fault marriage dissolution law. The divorce judgment was entered in June 1971, incorporating an agreement of the parties settling the money and property disputes and retaining jurisdiction "for the purpose of awarding attorneys' fees, if any." The parties and their counsel then became occupied with continuing disputes over the parties' substantial properties, and so postponed resolving the fee question. Mr. Kelly died in September 1973 and the Valparaiso Bank was substituted as a party defendant in the divorce proceeding in July 1974. In November 1975, following an evidentiary hearing, the order now before us was entered. The Bank urges that an award on account of fees is improper in the circumstances and that $50,000 is excessive.
Mrs. Kelly engaged her lawyer, Richard P. Warfield, in 1968. Her divorce suit against Mr. Kelly was then pending but inactive. The agreement between Mr. Warfield and his client concerning compensation was:
"Our fee ... will be a total of $1,500.00 plus our costs and expenses. At the trial, if the cases reaches that point, we will ask the Court to fix an attorney's fee to be paid by Mr. Kelly, which is customary in Florida. If the Court requires this to be done and when the fee is paid by Mr. Kelly, we will reimburse you the amount you have paid on our fee; assuming, of course, that the Judge fixes a fee in excess of $1,500.00. If the Court should fix a fee less than $1,500.00, we will reimburse you whatever amount the court fixes so that the total attorney's fee in such case will be the $1,500.00 as herein mentioned."
Lawyer Warfield filed an amended complaint for Mrs. Kelly but permitted it to remain inactive, in accordance with her wishes at the time, and eventually dismissed the case only to refile a new complaint in December 1970. Although Mrs. Kelly "felt that she should have half of what they had accumulated since their marriage," Mr. Warfield testified at the fee hearing that he considered she had only marginal claims to a special equity or some other right of participation in Mr. Kelly's "rather large estate in Okaloosa County." Most of Mr. Kelly's wealth, estimated at $10,000,000, was held in his name alone, and Mrs. Kelly had made no appreciable contribution to its accumulation. However, an investigator employed by Mrs. Kelly obtained "evidence of some misconduct on Mr. Kelly's part," characterized by Mr. Warfield as "a great deal of evidence that I don't think Mr. Kelly wanted necessarily paraded out in a courtroom." Thus, Mr. Warfield testified, Mr. Kelly was brought to the settlement *970 table. There was contradicting evidence that Mr. Kelly was otherwise disposed to settling money issues as he eventually did, and his lawyer testified he advised Mr. Kelly that the potential evidence was irrelevant to the money issues.
In June 1971, as a result of negotiations largely conducted by the parties themselves, they reached a general agreement for an equal division of the wealth and for Mr. Kelley's continued trusteeship of it during his lifetime. The agreement signed June 25, 1971, which was incorporated into the final judgment on that date, contains important elements of offers and counteroffers conveyed between Mr. and Mrs. Kelly in April and May. As a result, Mrs. Kelly obtained a half interest in Mr. Kelly's assets, which were to remain in trust until 10 years after his death. She also received monthly support and exclusive use of the home.
Mr. Warfield testified at length concerning the services he rendered, the time devoted and the results accomplished by his efforts for Mrs. Kelly. He stated that he devoted at least 103 hours to the representation and that if he handled divorce cases on the basis of hourly rates, which he didn't and doesn't, he would charge "between seventy-five and a hundred, probably closer to a hundred dollars an hour." The former Mrs. Kelly also adduced expert testimony to the effect that a reasonable fee for Mr. Warfield's services would be $60,000, taking into consideration the time devoted to the case, the responsibility undertaken, the services rendered, the ability and diligence required and the favorable results accomplished. Another lawyer witness, testifying for the appellant Bank, testified that a reasonable fee  taking into consideration all such factors except the results accomplished  would be $100 an hour or $10,000. Walter J. Smith, Esquire, lawyer for Mr. Kelly, charged $5,250, calculated at an average rate of $50 per hour, for services in the divorce suit and related controversies until Mr. Kelly's death.
The appellant Bank first contends the chancellor had no authority to make an award of fee money because the agreed trust arrangement placed Mrs. Kelly in exact financial parity with her husband. The purpose in awarding fee money, in both divorce and no-fault dissolution proceedings, is "to ensure that both parties will have reasonably the same ability to secure competent legal counsel." Mertz v. Mertz, 287 So.2d 691, 693 (Fla.2d DCA 1973). Compare Markland v. Markland, 155 Fla. 629, 21 So.2d 145 (1945). We agree it is ordinarily inappropriate to award fee money to one spouse, at the expense of the other, when the two have substantially equal ability to pay. That general rule ordinarily applies whether the parties' parity in financial ability results from the dissolution litigation or pre-existed it. Ross v. Ross, 341 So.2d 833 (Fla.3d DCA 1977); Colman v. Colman, 314 So.2d 156 (Fla.4th DCA 1975); Reinhart v. Reinhart, 291 So.2d 103 (Fla.1st DCA 1974). To be distinguished are cases sustaining fee money awards when the spouses have unequal ability to pay, though each has independent means. E.g., Kleinschmidt v. Kleinschmidt, 66 So.2d 815 (Fla. 1953); Wilkerson v. Wilkerson, 179 So.2d 592 (Fla.2d DCA 1965); Turney v. Turney, 149 So.2d 83 (Fla.3d DCA 1963); Arrington v. Arrington, 150 So.2d 473 (Fla.3d DCA 1963), cert. den. 155 So.2d 615 (Fla. 1963).
While discretion alone cannot overcome the rule of law, other unique factors in this case weigh in favor of the chancellor's decision to award fee money. The trust arrangement was no doubt intended, as Mr. Kelly's lawyer testified, "to split the properties that had been acquired during the marriage down the middle," but subsequent events alluded to in the record suggest that objective was not fully attained. Moreover, Mrs. Kelly's ability to pay a lawyer at the time of the divorce judgment or at the time of the fee hearing was not entirely clear, for the trust properties were not liquid assets in her hands. See Popeil v. Popeil, 21 Ill. App.3d 571, 576, 315 N.E.2d 629, 633 (1974). The chancellor also considered, not improperly, that fee money was granted divorced wives more *971 readily in 1968 through 1971, when the legal services were rendered and the judgment was entered, than in 1975, when the fee issue came before the court. Finally, we recognize that a fee money award is payable by one spouse to the other as an indemnity for fees reasonably contracted for and incurred, not by one spouse to the other's lawyer, either as a debt or as a penalty. See Keena v. Keena, 245 So.2d 665, 667 (Fla.1st DCA 1971); Chaachou v. Chaachou, 135 So.2d 206, 223 (Fla. 1961); Smith v. Smith, 90 Fla. 824, 107 So. 257 (1925); Kolb v. Kolb, 103 Fla. 193, 137 So. 237 (1931); Hope v. Lipkin, 156 So.2d 659 (Fla.3d DCA 1963). The 1968 contract between Mrs. Kelly and her lawyer might properly be considered as limiting the amount of his compensation above $1,500 to the amount recoverable by Mrs. Kelly in fee money. On this record it appears such contractual arrangements were common in 1968, while prudent lawyers now anticipate the possibility little or no fee money will be awarded, and so contract for payment of a reasonable fee by clients having a present or prospective ability to pay. Considering all these factors, we believe the chancellor acted within the proper limits of his discretion in awarding fee money notwithstanding Mrs. Kelly's apparent equal ability to pay.
The amount of fee money awarded is another matter. The $50,000 award to the former Mrs. Kelly would enable her to pay Mr. Warfield approximately $475 per hour for his services. Such an award goes far beyond reasonably indemnifying a financially disadvantaged spouse for lawyer's fees, beyond enabling her to be competently represented in the litigation. Such an award so emphasizes the financial results attained for Mrs. Kelly by her lawyer's effort that it approaches, if it does not constitute, a contingent fee  one measured exclusively or predominately by the financial results accomplished.
We recognize that Provus v. Provus, 44 So.2d 656, 657 (Fla. 1950) listed "the beneficial results, if any," as one of several familiar elements to be considered in determining a reasonable fee award, and that highly respected lawyers once considered "results accomplished should be given the great weight by the courts" because "[i]n cases where the wife is without money, the fee is necessarily contingent." J. Carson, Florida Law of the Family, Marriage and Divorce 600 n. 10 (1950) reprinting "Attorney's Fees in Divorce," 4 Mia. L.Q. 22, 28 n. 9 (1949). But see Phifer v. Phifer, 124 Fla. 223, 168 So. 9 (1936). However, no such contingency in the matter of fees existed in this case, in which the custom of judicial readiness to award the wife fee money was one of the factors justifying an award despite Mrs. Kelly's nonliability for more than $1,500. Under present law and practice  which is not altogether irrelevant, considering that Mrs. Kelly's claim for fee money was not pressed during Mr. Kelly's life, but was delayed more than four years  any contingency in the payment of fees is further lessened, if not eliminated entirely, by the abolition of grounds for divorce and the virtual assurance of a fee if either spouse can pay it. Moreover, contracts for contingent fees are prohibited in domestic litigation by public policy and by judicial canon. Salter v. St. Jean, 170 So.2d 94 (Fla.3d DCA 1964); Sobieski v. Maresco, 143 So.2d 62 (Fla.3d DCA 1962); Code of Professional Responsibility, Canon 2, Disciplinary Rule 2-106(C) (1970):
"A lawyer shall not ... enter into an arrangement for, charge, or collect any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof."
We need not directly consider in this case the extent to which "results accomplished" in terms of financial gain for the client spouse may properly influence the amount of the lawyer's compensation by his client. That question is primarily a matter of contract and is only secondarily of public concern. Lyle v. Lyle, 167 So.2d 256 (Fla.2d DCA 1964). But that element should have little or no influence on the amount of indemnity to be paid by one spouse to another *972 on account of the other's obligation to pay fees. As stated above, a fee money award is not recognition that one spouse owes the other's lawyer for his services. It is not to be exacted as a penalty, as in the case of attorney's fees awarded upon a successful insurance policy claim. Contrast Time Ins. Co. v. Arnold, 319 So.2d 638, 640 (Fla.1st DCA 1975). A fee money award in dissolution litigation also differs from such awards in eminent domain proceedings, in which the condemnor's obligation to pay on account of attorney's fees arises in part from constitutional guaranties that require a practical attempt to make the landowner whole. Florida Constitution, Article 10, Section 6; Jacksonville Expr. Auth. v. Henry G. Du Pree Co., 108 So.2d 289, 292, 294 (Fla. 1959). Entirely different considerations account for fee money awards in divorce and dissolution litigation. To exact fee money in an amount determined in such major part by Mrs. Kelly's financial gain from the divorce judgment does not serve the policy on which such awards are justified. Rather it implies that Mrs. Kelly was the "big winner" of a financial contest and penalizes Mr. Kelly further for being the "big loser." We do not consider that to have been the purpose of awarding fee money in divorce litigation, and it certainly is not the purpose in today's dissolution proceedings.
Taking into consideration the time devoted to Mrs. Kelly's representation by Mr. Warfield, the complexity of the issues, the nature of the responsibility undertaken, the services required, and the skill and diligence necessary, we consider that a reasonable payment to Mrs. Kelly on account of lawyer's fees would be $15,000. See Bosem v. Bosem, 279 So.2d 863, 866 (Fla. 1973); Donner v. Donner, 281 So.2d 399 (Fla.3d DCA 1972), cert. den., 287 So.2d 679 (Fla. 1973); Novack v. Novack, 189 So.2d 513 (Fla.3d DCA 1966), cert. disch. 195 So.2d 199 (Fla. 1967); and Trope v. Trope, 238 So.2d 486 (Fla.3d DCA 1970).
REVERSED and REMANDED for entry of a judgment in favor of the former Mrs. Kelly, on account of fees, in the amount of $15,000.00.
ERVIN, J., concurs.
MILLS, Acting C.J., concurs in part and dissents in part.
MILLS, Judge, concurs in part, dissents in part:
Under the facts revealed by the record presented to us in this case, I agree with the majority that the estate should pay a fee to Mrs. Sims' attorney, but I do not agree that $15,000.00 is a reasonable fee. Under the facts of this case, a reasonable fee would be $5,150.00. This is based on the only testimony adduced that $50.00 an hour in divorce proceedings was the customary and reasonable charge made by attorneys in divorce actions in Okaloosa County at the time this action was pending.
I would reverse and remand to the trial court with directions to enter a judgment in favor of Mrs. Sims for attorney's fees in the amount of $5,150.00.