353 So.2d 1185 (1977)
Gary Adair WATTERSON, Appellant,
v.
Earline O. WATTERSON, Appellee.
No. EE-378.
District Court of Appeal of Florida, First District.
November 22, 1977.
On Rehearing January 20, 1978.
*1186 M. Stephen Turner and Joseph P. Mawhinney of Thompson, Wadsworth, Messer, Turner & Rhodes, Tallahassee, for appellant.
L. Ralph Smith, Jr. of Smith & Moore, Tallahassee, for appellee.
BOYER, Judge.
By appeal from a final judgment of dissolution of marriage the husband (appellant) asserts the following four alleged errors: (1) The trial court erred in declaring the *1187 parties' adult son a dependent within the meaning of Florida Statute 743.07(2) and in considering that dependency in awarding to the wife lump sum alimony; (2) the trial court erred in awarding the wife lump sum alimony in the amount of $63,000.00; (3) the trial court erred in requiring the husband to maintain life insurance on his life for the benefit of the wife; and (4) the trial court erred in awarding the wife attorney's fees.
The parties were married in 1953 at which time neither had substantial assets. The wife worked as a legal secretary during the first years of the marriage while the husband became a C.P.A. The parties only child, a son, was born in 1955. In 1961, the wife became primarily a homemaker and thereafter invested her energies in her husband's career to the exclusion of her own personal development. The parties attained a "fused relationship" in the words of the clinical psychologist who testified at the trial. During the early 1970's, the husband was a partner in an accounting firm earning from $50,000-$70,000 annually. In June of 1975, the husband left that firm taking with him certain assets, accounts receivable, and client files having a value of $107,000. He is now in partnership with another accountant earning approximately $35,000 in 1975 and 1976. He is also a Major in the National Guard earning from that source approximately $4,000 a year. When he retires his military retirement will be between $800 and $900 a month. When the parties separated in September of 1975, the wife remained in the marital home which was in her name and which had a value of $15,000. During the 15 month period of separation, the wife became extremely upset over the marriage breakup, the husband's adulterous relationship with another woman, and her financial future and security. At the final hearing, the clinical psychologist whom the wife began seeing during the separation period, testified she was incapable of competing in the job market and needed continued mental health counseling. The psychologist also testified in regard to the parties' 21-year-old son stating that the son was upset over his parents' divorce and was clinically depressed, socially withdrawn and incapable of earning a living and maintaining himself. The psychologist felt the son needed continued counseling and would most likely improve as soon as the dissolution proceedings were over. It was his opinion that the son was college material and should go to college since his personality and interests were not suited to manual labor.
The parties have a net worth of $373,640.06 on December 31, 1974. Two years later on the day of the final hearing, December 22, 1976, the husband testified to a net worth of $116,105.28 and the wife stated in a financial affidavit submitted to the court that she had a net worth of $52,145.14. See the following table:

 TABLE
ASSETS AT THE TIME
OF FINAL HEARING WIFE HUSBAND
------------------------------------------------------------------
Savings Accounts, cash $ 636.64 $ 388.76
Accounts Receivable 11,000.00
Notes Receivable 94,956.52
Real Estate (marital
 home) 15,000.00
Automobiles & furnishings 2,500.00
Cash value  Life insurance 5,670.00[*]
Securities 30,838.50[**]
Investments  Equity 21,000.00
CPA Partnership:
 Net Capital 21,000.00
 Goodwill 16,875.00
Notes Payable (51,615.00)
 __________ ____________
NET WORTH $52,145.14 $116,105.28

[4] At the final hearing the wife objected to the husband's testimony concerning his net worth since he had not furnished accurate or complete records of the value of his accounting practice. The court noted this and stated it would not be bound by the figures. During the separation, the husband made several real estate investments which decreased his assets and generated losses. The wife testified that during the *1188 15 month separation she withdrew $98,381.14 from savings accounts in her name and spent all of it but $1,000.00. $11,128.35 of this money was spent for taxes and her husband's investment in a real estate venture. The rest of the money was used for the purchase of appliances, furniture, clothes, a new car, payment for repair and remodeling work on the house and donations to various churches. The wife testified she thought if she got rid of the money her husband would come back to her.
[5] In the final judgment, the trial judge determined that the son's lack of earning capacity was significantly due to his emotional trauma over the domestic discord of the parties and that he required substantial assistance. The court found that the son was a "dependent" person within the meaning of Section 743.07(2), Florida Statutes (1975) in need of support for the next year or two rather than indefinitely. The trial court concluded that allocation of property to the wife sufficient to buttress supporting the son's needs would be more practical than a specific award of child support. He ordered periodic alimony of $1,000 a month to the wife and lump sum alimony in the form of $18,000 worth of securities (1/2 interest in jointly held securities worth $36,000) and $45,000 worth of promissory notes held by the husband. The court did not give any weight to the $98,000 withdrawn from the savings accounts, stating that though the dissipation was prodigal, a substantial amount was spent in providing for the living needs of the wife and son over the 15 month separation and that the emotional distress precipitated by the marriage rupture had a significant influence on those actions. Finally, the court found that because of the wife's substantial dependence on the husband for support, the husband should maintain a $40,000 life insurance policy on his life for the benefit of his wife. Attorney's fees were awarded to the wife in the amount of $8,000.
[6] At the final hearing, the learned trial judge stated that he had been confronted with more problems in this case than any case he could recall in nearly 20 years on the bench. We agree with the learned and able trial judge that this case presents many difficulties: However, we must disagree with the manner in which the law was applied to the facts of the case.
[7] There is nothing in the law which requires a parent to support a child who is not disabled by physical or mental incompetency beyond the age of 21. Briggs v. Briggs, 312 So.2d 762 (Fla. 4th DCA 1975). The decision of Finn v. Finn, 312 So.2d 726 (Fla. 1975) which adopted the dissenting opinion in White v. White, 296 So.2d 619 (Fla. 1st DCA 1974) simply holds that the law which changed the age of majority from 21 to 18 did not change the previous law which enabled a trial judge to order support for a dependent child until he reaches 21, providing the child pursues in good faith the furtherance of his education and has a need for help beyond his own reasonable capacity to provide for himself. Sub judice the "child" was over 21, almost 22, at the time of the final judgment. There is no allegation that he has a physical disability nor is mentally incompetent. While it is true that, depending on the circumstances, the trial court had the power to order support until he was 21, there is no justification for the provision of such support beyond that age. In any event, the trial judge incorrectly used the vehicle of lump sum alimony to provide the support: Such is not authorized by Florida Statutes 61.13(1) and is contrary to the law announced in Heckes v. Heckes, 129 Fla. 653, 176 So. 541 (1937).
[8] The parties were married for 22 years and at the time of the divorce the wife was 41 years old. The wife worked until 1961 after which she devoted her time and energy to the profession of being a mother and housewife. She is indeed the type of wife contemplated by this court in Brown v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974) and Ruhnau v. Ruhnau, 299 So.2d 61 (Fla. 1st DCA 1974) as a deserving recipient of an award of lump sum alimony. However, we find that the trial court erred in refusing to consider the $98,381.14 spent by the wife during the separation period. *1189 Although it is true that approximately $11,000 of that money was spent for taxes and the husband's real estate investment, a substantial portion was used to improve assets retained by the wife. To ignore the $98,000 dissipated by the wife and then grant her an approximate 50% division of the assets in the husband's name was error.
[9] As already recited, the parties had a net worth of $373,640.06 in 1974 and in 1976 they testified to a combined net worth of $168,250.42. This represents a drastic decrease in the amount of $205,389.64. Approximately $98,000 of this decrease has been accounted for but we are at a loss to explain the other. The wife made the charge that her husband, a highly skilled accountant, manipulated the assets in such a manner so as to deprive her of her share of the marital assets. She testified her husband told her he "would fix her good" and she would end up in Chattahoochee rather than receive a fair settlement. In response to the wife's charge that her husband had made it impossible for her to determine the value of his accounting practice the court responded:
"And I think there have been some problems here, and I am not going to be critical of either side in the problems of getting discovery and responding to discovery. I have determined that I am going to decide this case on the best basis that I can, and with what information is available to me, and what I feel has been  if I feel there has been any concealing or failure to reveal, then I am just going to project it, and use whatever base that I find is the nearest I can use."
[10] It appears the trial court did project some type of base in making this award of lump sum alimony. However, this court does not have the benefit of the trial court's reasoning. Therefore on the record as it appears before us the lump sum alimony provision must be reversed.
[11] It was also error for the trial court to require the husband to maintain life insurance on his life for the benefit of the wife, to provide support for her in the event of and after the husband's death. "Normally, alimony terminates upon the death of the former husband." Putnam v. Putnam, 154 So.2d 717 (Fla. 3rd DCA 1963). There is nothing in this record which justifies an award of alimony after death. Todd v. Todd, 311 So.2d 769 (Fla. 1st DCA 1975).
[12] The award of attorney's fees must be reversed too. The wife, with the special advantage of liquidity and absence of personal obligations, had a financial ability equal to the husband to pay attorney's fees. The Valparaiso Bank & Trust Co. v. Sims, 343 So.2d 967 (Fla. 1st DCA 1977). Neither attorney's fees nor costs may be awarded as punishment, no matter how deserving the punishment. See McKennon v. McKennon, 312 So.2d 804 (Fla. 1st DCA 1975).
[13] Reversed and remanded for further proceedings consistent herewith.
[14] MILLS, J., concurs.
[15] McCORD, C.J., concurring in part and dissenting in part.
[16] McCORD, Chief Judge, concurring in part and dissenting in part.
[17] As to Point I, § 743.07(2), Florida Statutes (1975), by which the Legislature removed the disability of nonage for all persons who are 18 years of age or older, provided in subsection (2) thereof, "This Act shall not prohibit any court of competent jurisdiction from requiring support for a dependent person beyond the age of 18 years; ..." This statute clearly authorizes the court to require support of dependent persons after they reach the age of their majority in proper cases. Here the evidence supports the trial judge's ruling that the son of the parties, though he had reached his majority, was suffering from a temporary disability. While I agree with the majority opinion that it was improper for the trial judge to use the vehicle of lump sum alimony to provide support for the son, in my view, the trial court is authorized on remand to award temporary support for the son during the period of his disability.
*1190 [18] As to Point II, while I agree with the majority opinion that the trial judge should not have disregarded the $98,381.14 the wife spent during the 15-month separation period, in my view, under the facts of this case, this sum should not be treated entirely as though it were still a part of their joint assets. The dissipation of this money by the wife should be given some detrimental weight in connection with the division of the assets, but such sum should not be treated as though it still exists.
[19] As to Point III, I agree there is nothing in the record to justify an award of alimony after death, and therefore it was error to require the husband to maintain life insurance on his life for the benefit of the wife to provide support for her in the event of and after the husband's death.
[20] Point IV, as to the trial court's award of attorneys fees to the wife, will be governed by the respective financial abilities of the parties after division of assets upon remand.

[21] ON PETITION FOR REHEARING GRANTED
McCORD, Chief Judge.
[22] We have reviewed this case on petition for rehearing and have concluded that the trial judge's award of lump sum alimony (with the exception of such amount as was included therein for support of the parties' son), was properly arrived at in the trial judge's adjustment of the equities between the parties.
[23] There is nothing is the record to justify an award of alimony after death, and therefore is was error to require the husband to maintain life insurance on his life for the benefit of the wife to provide support for her in the event of and after the husband's death.
[24] The award of attorney's fees to the wife by the trial court is affirmed.
[25] Affirmed in part and reversed in part and remanded for further proceedings consistent herewith.
[26] MILLS, J., concurs.
[27] BOYER, J., dissents.
[28] BOYER, Judge, dissenting.
[29] I respectfully dissent to modification of our prior opinion on rehearing. I would adhere to our original opinion and deny the petition for rehearing.
NOTES
[*] There is a conflict in the record, in that the husband testified the wife has a life insurance policy with a cash surrender value of $6,000.00 in addition to the wife's assets of an automobile and furnishings for a total of $11,700.00 in this category while the wife submitted a figure of only $5,670.00.
[**] Although the securities were jointly held, the wife included the total value in her net worth and the husband excluded the value of his 1/2 interest from his net worth.