**STATE of Oklahoma, ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Arnold D. FAGIN, Respondent.**

**SCBD 3755.**
**OBAD 1021.**

Supreme Court of Oklahoma.

July 14, 1992.

Rehearing Denied Oct. 5, 1992.

Dan Murdock, Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

James A. Kirk, Thomas J. Daniel, Kirk & Chaney, Oklahoma City, for respondent.

SIMMS, Justice:

Respondent, Arnold D. Fagin, was the subject of a formal complaint filed by the Oklahoma Bar Association, which alleged that he violated Rule 1.5 of the Oklahoma Rules of Professional Conduct, 5 O.S.Supp. 1988, Ch. 1, App. 3–A. The parties agree as to the material facts leading up to the filing of the complaint, and the only issue to be resolved is the construction of and application of Rule 1.5 to those facts. We find that respondent's conduct violated the rule, and we impose a public reprimand for such misconduct.

Respondent entered into an agreement with Vickie Meyers to represent her in a divorce action. One of the provisions of the contract read as follows:

"2. Your final fee shall be based on *the results accomplished in your case,*

the degree of difficulty your case presents, the amount in controversy, and my hourly rate of $175.00, all of which are criteria used by the Oklahoma Courts in determining appropriate attorney fees in family law cases. It is impossible to tell in advance the amount of time or total cost your case will require...." (Emphasis added)

Respondent advised Meyers to refuse two settlement offers proposed by her husband, and the matter went to trial. After trial, the court awarded a much greater amount of property to Meyers than she would have received under either of the settlement offers. In fact, the evidence at respondent's disciplinary hearing indicated that Meyers' trial judgment was over $100,000.00 more favorable than the settlement proposals. On the basis of the above-quoted contract provision, respondent sent Meyers a final bill for $5,021.26 in attorney's fees which included $4,000.00 billed as an:

"Additional attorney fee based upon 'results obtained' for client as prescribed in written attorney fee contract, because of extremely beneficial court decision for client on alimony in lieu of property, and support alimony together totaling $114,000 plus interest on the $60,000 alimony in lieu of property award, and with former husband also being required to pay all of the extensive marital debts."

Meyers sent a check in the amount of $1,021.26 with the notation "payment in full" placed upon it. Due to the notation, respondent chose not to deposit the check and sent several letters to her requesting the total amount he claimed was due. She then contacted the Oklahoma Bar Association and filed a grievance against respondent.

Respondent answered the grievance, and in turn filed an action in Oklahoma County District Court against Meyers for the amount due in attorney's fees. Subsequently the complainant, Oklahoma Bar Association, filed a complaint against respondent for violating Rule 1.5(d) by entering into a contract for a fee the payment of which was contingent upon the result obtained in a domestic relations matter. Respondent denied that the contract violated the rule and asserted that such contracts have long received acceptance by the courts of this State.

The bar proceeding was conducted before a three member panel which received expert testimony from several lawyers "specializing" in family law that respondent's contract was not a contingent fee and did not violate Rule 1.5(d). The panel concluded that complainant failed to establish by clear and convincing evidence that respondent had violated Rule 1.5, and they recommended a dismissal of the complaint. The panel further requested this Court to promulgate a court rule clarifying the effect of Rule 1.5 in cases such as the one at bar.

■ In bar disciplinary proceedings, this Court is to conduct a *de novo* examination of the entire record to determine if the attorney violated a disciplinary rule. *State, ex rel., Oklahoma Bar Ass'n v. Miskovsky*, 804 P.2d 434 (Okla.1990). We reject the recommendation of the trial panel and find that the clear and convincing evidence establishes that respondent violated the provisions of Rule 1.5 which provide, in pertinent part, as follows:

"(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and *the results obtained;*

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) *whether the fee is fixed or contingent.*

\* \* \* \* \* \*

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law....

(d) A lawyer *shall not enter into an arrangement for, charge,* or collect:

(1) *any fee in a domestic relations matter, the payment or amount of which is contingent upon the result obtained,* other than to collect past due alimony or child support; ..."

(Emphasis added)

Respondent asserts his fee arrangement is not a "contingent" fee prohibited by the rule, but rather, it is an enhanced fee based upon the results which is permissible under the rule for two reasons.

First, he notes the factors listed in Rule 1.5(a) are for determining whether an attorney's fee is reasonable. One of those factors, (a)(4), uses the term "result*s* [plural] obtained" whereas the prohibition in subsection (d)(1) is for fees contingent upon the "result [singular] obtained." He contends that "results" in (a)(4) refers to a fee being based upon the *overall* results of the case, but the singular term "result" of (d)(1) refers to a *specific* result such as the granting of a divorce. Respondent contends the distinction between the plural and singular form of the word shows that subsection (a) and subsection (d) are speaking of different types of fee arrangements.

Secondly, respondent relies upon the Comment to the rule to support this argument. The Comment states in part:

"A lawyer shall not charge a fee contingent upon securing a divorce or upon the amount of alimony or support or property settlement or obtaining custody of a child or children."

Respondent contends this statement shows that the (d)(1) prohibition against "result [singular] obtained" fees applies to a specific result only, such as "securing a divorce." However, respondent's construction of the Comment is strained at best.

Beyond prohibiting fees contingent upon the successful granting of a divorce, the Comment explains that the rule also prohibits an attorney from charging a fee which is contingent upon "the amount of alimony or support or property settlement" obtained for the client by the attorney. The additional fees charged by respondent violate this prohibition.

His enhanced fee was based upon what he called an "extremely beneficial court decision for client on alimony in lieu of property, and support alimony." His testimony at the hearing was that the fee arrangement entitled him to an additional fee because he obtained a "tremendous result" for her. He apparently was the final arbiter of what result was worthy of an enhanced fee. There was nothing to indicate that this enhanced fee was a "bonus" that his client opted to give him in appreciation for his service. Rather, it appears the additional fee was a charge imposed upon the client when respondent felt he deserved it.

Nevertheless, his fee was to be enhanced because the trial resulted in increased alimony and support awards. The Comment clearly states that fees contingent upon the amount of such alimony or support are prohibited. Hypothetically speaking, he claims that if the result were less favorable, then he would consider reducing his fee accordingly. However, there is nothing in the contract to indicate that he was obligated to decrease his fee in response to an unfavorable result, and such assertion must be dismissed.

Not only does the Comment weigh against respondent's construction of the rule, but the clear language of the rule also contravenes his argument. Before we look to the rule's express language, a brief explanation of the well-settled proscription against contingent fees in domestic relations cases will be beneficial.

In *Opperud v. Bussey*, 172 Okla. 625, 46 P.2d 319 (1935), this Court determined that contingent fees in divorce actions violated the public policy which encourages a reconciliation between the spouses. Citing numerous decisions of sister states, the Court noted that a contingent fee arrangement in

divorce actions involves the personal interest of an attorney in procuring a divorce and obtaining a more favorable division of property. The Court stated:

> "An agreement between attorney and client as to compensation is not illegal, although contemplating a proceeding to secure a divorce, unless it involves the personal interest of the attorney in preventing a reconciliation between the parties, as where it is contingent on success, or is *measured by the amount of alimony secured.*" 46 P.2d at 324 (quoting Corpus Juris [vol. 13, p. 464]) (Emphasis added).

Hence, any fee arrangement in which the attorney will receive an enhanced fee if his efforts produce a more favorable property division or alimony award to his client involves a personal interest because the greater amount he obtains for his client, the greater he can charge as a fee. Moreover, the attorney has a personal interest in assuring a divorce is granted, because without a divorce he will not be able to charge a fee based upon the alimony and property settlement.

Not only does this sort of arrangement prevent a reconciliation, but contributes to the trend of recent divorce trials becoming a battleground where each combatant employs an attorney to obtain as much property as possible. Such an arrangement fails to promote the "sanctity of the marriage relation, the welfare of children, the good order of society, [and] the regard for virtue, all of which the law seeks to foster and protect." 46 P.2d at 322. *Accord McCrary v. McCrary,* 764 P.2d 522 (Okla.1988) (citing Rule 1.5(c) and (d) and holding that a contingency fee arrangement based upon the amount recovered in a divorce case gives the attorney a personal interest in the litigation thus serving as an impediment to reconciliation).

▮ Rule 1.5(c) states that a fee "may be contingent on the outcome of the matter for which the service is rendered, except in a manner a contingent fee is prohibited by

paragraph (d) or other law." Although many courts have gone to great lengths to define what constitutes a contingent fee, we need not determine what Rule 1.5(c) means by the term "contingent fee" because Rule 1.5(d)(1) forbids *"any fee* in a domestic relations matter, the payment or *amount of which is contingent* upon the result obtained." (Emphasis added) Thus, *any* type of fee which has some aspect of a contingency involved is impermissible. Because respondent's fee is based on an hourly rate subject to enhancement if the results of the case are favorable, it is one, the "amount of which is contingent upon the result obtained." Hence, his fee arrangement violates Rule 1.5(d).

Ignoring the the clear prohibition of such fee arrangements by Rule 1.5(d)(1), respondent argues that Rule 1.5(a) and Oklahoma case law, as well as decisions from other jurisdictions, permit the use of the "results obtained" as a factor to use in determining whether an attorney's fee is reasonable in divorce actions. However, neither the rule nor our case law has unequivocally stated such. Another factor which the rule lists as a consideration is "whether the fee is fixed or contingent." As noted, subsection (d) indicates that fees which are contingent on the result obtained in domestic relations matters are forbidden. Thus, that portion of respondent's fee which is prohibited by (d)(1) cannot be considered reasonable under (a). Such a construction would render the enactment contradictory.

Moreover, in *State ex rel. Burk v. City of Oklahoma City,* 598 P.2d 659 (Okla.1979), this Court held that "the amount involved and the results obtained" was one of several factors to consider in determining a reasonable attorney's fee in an equitable trust action.[1] Later, we applied the *Burk* factors to find the trial court correctly set the attorney's fee in a bad faith action. *Oliver's Sports Center v. National Standard Ins. Co.,* 615 P.2d 291 (Okla.1980). Respondent, as well as commentators, asserts *Oliver's Sports Center*

---

1. The approach we adopted in *Burk* is known as the "lodestar approach" because the time spent multiplied by the hourly rate is the lodestar to which additional fees are added based upon the enumerated factors.

extended the *Burk* factors to all types of actions including domestic relations cases. However, there is no language in *Oliver's Sports Center* to indicate that all the factors of *Burk* are to be used in setting a fee in a domestic relations action. Although we do not at this time pronounce which factors may be considered by an attorney in charging attorney's fees or a court in awarding attorney's fee in a domestic relations action, we hold that Rule 1.5(d) forbids an attorney from charging a fee based upon the results obtained in a divorce action. *See Valparaiso Bank & Trust Co. v. Sims,* 343 So.2d 967 (Fla.Dist.Ct.App.1977) (in considering several factors similar to those listed in *Burk* and Rule 1.5(a) appellate court refused to consider "the results accomplished" in awarding fees to wife in divorce action because such factor was contingent in nature).

Numerous courts have considered the question of whether attorneys fees in domestic relations matters may be enhanced based upon favorable results. However, almost all of these cases involved a trial court ordering one spouse to pay all or a large portion of the other spouse's attorneys fees. Few courts have considered the situation before us; i.e., an attorney charging his own client an enhanced fee based upon the "results obtained".

One court considered the issue in an action brought by a law firm against its former client for fees in a divorce action and held that a fee based upon the results of the action was not a contingency fee because it was neither fixed or to be determined under some formula. *Eckell v. Wilson,* 409 Pa.Super. 132, 597 A.2d 696 (1991). The court's rationale is unpersuasive because we have concluded that Rule 1.5(d) prohibits *any* fee which is contingent upon the amount of support or alimony or property settlement regardless of whether a percentage is set or to be determined under some formula.

Of those courts considering the issue of awarding fees against one spouse in domestic relations cases, the following have permitted the results obtained to be considered where the court sets the fee: *Stead-* *man v. Steadman,* 514 A.2d 1196 (D.C.Ct. App.1986); *Husband S. v. Wife S.,* 294 A.2d 89 (Del.1972); *Head v. Head,* 66 Md. App. 655, 505 A.2d 868 (1986); *In re Marriage of Malec,* 205 Ill.App.3d 273, 150 Ill. Dec. 207, 562 N.E.2d 1010 (1990); *Swanson v. Swanson,* 48 Ohio App.2d 85, 355 N.E.2d 894 (1976); *In re Marriage of Jayne,* 200 N.W.2d 532 (Iowa 1972); *Ritchie v. Ritchie,* 226 Neb. 623, 413 N.W.2d 635 (1987); *In re Marriage of Craig,* 30 Or.App. 419, 567 P.2d 141 (1977); *Beals v. Beals,* 682 P.2d 862 (Utah 1984); *Donahue v. Donahue,* 299 S.C. 353, 384 S.E.2d 741 (1989); *Wood v. Wood,* 184 W.Va. 744, 403 S.E.2d 761 (1991); *Gross v. Gross,* 319 S.W.2d 880 (Mo.Ct.App.1959); *Connors v. Connors,* 594 S.W.2d 672 (Tenn.1980); *Rosser v. Rosser,* 355 So.2d 717 (Ala.Civ.App.1977); *Margulies v. Margulies,* 506 So.2d 1093 (Fla. Dist.Ct.App.1987).

Those courts determining that the results achieved may not be considered in awarding fee to one spouse include the following: *Valparaiso Bank & Trust Co., supra; Salerno v. Salerno,* 241 N.J.Super. 536, 575 A.2d 532 (Super.Ct.Ch.Div.1990); *Hennen v. Hennen,* 53 Wis.2d 600, 193 N.W.2d 717 (1972); *Lien v. Lien,* 278 N.W.2d 436 (S.D.1979); *Flynn v. Flynn,* 338 N.W.2d 295 (S.D.1983); *Owensby v. Owensby,* 312 N.C. 473, 322 S.E.2d 772 (1984); *Epstein v. Epstein,* 386 So.2d 1200 (Fla.Dist.Ct.App.1980); *Shepherd v. Shepherd,* 526 So.2d 95 (Fla.Dist.Ct.App.1987).

The Oklahoma Court of Appeals has spoken on this question to some degree in several cases. In *Longmire v. Hall,* 541 P.2d 276 (Okla.Ct.App.1975), an action brought by an attorney against his former client in a divorce action, the court determined that a contingent fee arrangement of 25% of the property settlement and support alimony was void. In *dicta,* the court stated that the results obtained is one factor which enters into the reasonable value of an attorney's services when the court awards fees. In *Gardner v. Gardner,* 629 P.2d 1283 (Okla.Ct.App.1981), the Court of Appeals held that in the exercise of judicial discretion in awarding fees, a trial court may allow an "additional *bonus*" to the wife for work done by her attorney and

experts. (Emphasis in original) In another case, the court concluded that the trial court erred in awarding attorney's fees without first taking evidence as to the time spent, and the reasonableness thereof, in accordance with *Burk. Mastromonaco v. Mastromonaco*, 751 P.2d 1106 (Okla.Ct. App.1988). Most recently, a Court of Appeals decision held that if a trial court determines that attorney's fees should be awarded, then the amount must be fixed in accordance with *Burk. O'Connor v. O'Connor*, 813 P.2d 544 (Okla.Ct.App.1991). We decline to rule at this time as to the correctness of these decisions, Because they do not appeal the issue of a contract between an attorney and his client.

Respondent urges that permitting attorneys to enhance their fees based upon the favorable results obtained will "serve to encourage diligence, vigorous advocacy, and overall excellence in that lawyer's representation of his client." He adds that prohibition of such enhanced fees may promote mediocrity. However, we remind the attorneys of this State that diligence, advocacy and excellence are expected of them by not only this Court but also by the Rules of Professional Conduct and the public that pays their fees.

Having addressed all of respondent's contentions, we now turn to the statute which authorizes contingent fees. Title 5 O.S.1981, § 7 provides:

> "It shall be lawful for an attorney to contract for a percentage or portion of the proceeds of a client's cause of action or claim not to exceed fifty percent (50%) of the net amount of such judgment as may be recovered, or such compromise as may be made, whether the same arises ex contractu or ex delicto, ..."

This provision was noted by the Legal Ethics Committee of the Oklahoma Bar Association when it issued Advisory Opinion No. 41 (November 25, 1932) concerning contingent fees in divorce cases. The opinion stated that an attorney's fee made contingent upon securing a decree of divorce as well as contingent upon the amount of property and money received under the decree was void as against public policy citing many of the concerns this Court voiced in *Opperud v. Bussey, supra.* The committee further held:

> "a suit for divorce and for the adjustment of property rights incident thereto is not a 'cause of action or claim' arising 'ex contractu' or 'ex delicto' within the meaning of Sec. 4101, C.O.S.1921, 5 Okl. St.Ann. § 7, ..."

■ Hence, the position of the Legal Ethics Committee has long been that a divorce action, and its resulting property distribution, is not governed by the provisions of 5 O.S.1981, § 7. Fees made contingent upon the amount of property division and alimony in a divorce action are against public policy and contrary to the Oklahoma Rules of Professional Conduct.

Therefore, we find that the clear and convincing evidence shows that respondent violated the provisions of Rule 1.5(d) by entering into an arrangement and charging Meyers for an additional fee based upon the results he obtained for her in her divorce action. Although he obtained a favorable result for his client, the Rules do not permit him to increase his fee based upon those results.

Meyers has not paid the $4,000.00 fee to date. Since respondent has received no more fees than what he is legitimately entitled to, any discipline greater than a public reprimand is unnecessary. Therefore, respondent is publicly reprimanded for this misconduct and ordered to pay costs of the proceeding within Thirty (30) Days of the date that this opinion becomes final. Respondent's Application to Assess Costs against the Oklahoma Bar Association is Denied.

OPALA, C.J., and LAVENDER, HARGRAVE, ALMA, WILSON and WATT, JJ., concur.

KAUGER, J., concurs in result.

HODGES, V.C.J., dissents.

SUMMERS, J., disqualified.

KAUGER, Justice, concurring in result.

Unquestionably, contingent fees in a divorce proceeding are against public policy. Nevertheless, the respondent offered materials from live Continuing Legal Education programs sponsored by the Oklahoma Bar Association [1] which contained the "results accomplished" provision. It is troubling that although the rule is clear to the Court, at seminars conducted by the official arm of the Court,[2] lawyers have been advised to engage in a billing practice which is contrary to the plain intent of the rule. Both the teachers of OBA–CLE courses and other practitioners testified at the respondent's hearing that they used the same "results accomplished" provision in contracts with their divorce clients, and that it did not violate Rule 1.5

Should we on the one hand suspend lawyers from the practice of law for failure to attend mandatory CLE,[3] and on the other hand, single out one attorney for discipline after he practices what sanctioned seminars have taught him?[4] Rather than do so, I would treat this matter as an application by the OBA for examination of Rule 1.5. In analyzing the rule, I concur with the majority that the rule has been misinterpreted by the respondent.

---

1. Title 5 O.S.1991 Ch. 1, App. 1–B, Rule 7, Regulation 4, 4.2 provides in pertinent part:

   "4.2 Continuing legal education programs sponsored by the following organizations are presumptively approved for credit, ...
   Oklahoma Bar Association ..."

2. Title 5 O.S.1991 Ch. 1, App. 1 art. 1, § 1 provides:

   "The Oklahoma Bar Association is an official arm of this Court, when acting for and on behalf of this Court in the performance of its governmental powers and functions."

3. Title 5 O.S.1991 Ch. 1, App. 1–B, Rule 3 provides:

   "Each attorney subject to these rules pursuant to Rule 2 herein shall attend, or complete an approved substitute for attendance, a minimum of twelve (12) hours of approved continuing legal education each year beginning January 1, 1986."

4. The Respondents asserts that "The courts, legal treatises, articles, and practitioners are unanimous in their opinion that a results obtained adjustment to a final hourly-based domestic fee is not a prohibited contingent fee."