OPINION OF THE COURT
Lewis R. Friedman, J.
Plaintiff seeks summary judgment on the fifth cause of action, for rescission. The application raises serious questions under the Code of Professional Responsibility, not previously addressed in the New York cases, concerning retainer agreements and "bonuses” in matrimonial cases.
In July 1992 plaintiff retained defendant to represent her in a matrimonial matter. The written retainer called for plaintiff to pay a fee determined solely by multiplying the number of hours expended on the case times the hourly rate charged for the service.[1] Negotiations proceeded for over two years until a settlement was reached. Plaintiff’s husband ultimately agreed to pay her more then 20 times his original offer. Plaintiff has stated in her pleadings that defendant’s legal work was "fabulous.” On August 18, 1994 plaintiff, in New York, executed the separation agreement. The document was shipped by Federal Express to plaintiff’s husband who was in California; he executed it on August 19. The parties were divorced by judgment entered August 30, 1994.
Defendant and her former firm were paid about $300,000 based on their time charges. On August 18, allegedly after plaintiff had executed the separation agreement, plaintiff and defendant executed the Performance Fee Agreement (PFA) which is at issue here. In the PFA, plaintiff "in light of the results achieved by [defendant] * * * has graciously and generously agreed to pay a performance fee of $2,000,000” in three installments.[2] Defendant agreed to waive her outstanding bill for $41,000 in fees and expenses. The first installment of the performance fee, $1,000,000, was due "upon transfer to [plaintiff] of the equitable distribution payment” in the separation agreement. That part of the fee was paid on August 29, 1994. Plaintiff retained new counsel in early January 1995, *769 refused to pay the second installment, due January 15, and demanded repayment of the $1,000,000 already paid. This action for rescission and restitution followed. Defendant counterclaimed for the balance of her fee.
In the fifth cause of action plaintiff contends that the PFA violated the Code of Professional Responsibility. There is no doubt that a retainer agreement with counsel is invalid if it violates the Code of Professional Responsibility (cf., Cohen v Lord, Day & Lord, 75 NY2d 95, 99-101 [1989]; Matter of Cooperman, 83 NY2d 465, 472 [1994]). Specifically plaintiff alleges a violation of DR 2-106 (C) (2) (22 NYCRR 1200.11 [c] [2]) which at the relevant time provided that an attorney "shall not enter into an arrangement for, charge or collect: (2) any fee in a domestic relations matter (i) the payment or amount of which is contingent upon the securing of a divorce or upon the amount of maintenance, support, equitable distribution or property settlement.”
The rule against contingent fees in domestic relations cases in this State is deep seated and well established. Long prior to the adoption of the Code of Professional Responsibility and the Equitable Distribution Law (Domestic Relations Law § 236 [B]) the courts consistently held that an agreement between a spouse and counsel to pay "a percentage or any part of her alimony is void as against public policy” (Levine v Levine, 206 Misc 884, 885 [Sup Ct, Queens County 1954]; Matter of Dangler, 192 App Div 237 [1st Dept 1920]; Matter of Brackett, 114 App Div 257 [3d Dept 1906], affd 189 NY 502 [1907]; Van Vleck v Van Vleck, 21 App Div 272 [4th Dept 1897]). The same rule applied to lump-sum payments to resolve future alimony claims (Dougherty v Burger, 133 Misc 807, 808 [Sup Ct, NY County 1929]).[3]
When New York adopted the Code of Professional Responsibility it modified the Model Code of Professional Responsibility promulgated by the American Bar Association to adopt the clear prohibition on contingent fees in domestic relations cases contained in DR 2-106 (C) (2). The original American Bar Association Ethical Consideration (EC 2-20) as adopted in 1970 by the New York State Bar Association did not contain a flat prohibition on contingent fees in matrimonial cases but noted *770 that "because of the human relationships involved and the unique character of the proceedings contingent fee arrangements in domestic relation cases are rarely justified.”
The policy reasons for the restrictions in matrimonial cases on the use of fees which are contingent on the outcome has been that this kind of fee might induce lawyers to discourage reconciliation and encourage bitter and wounding court battles (see, Restatement, Contracts § 586 [1932]; Wolfram, Modern Legal Ethics § 9.4.4, at 538-541 [1986]; Speiser, Attorney’s Fees § 2.6, at 83, 89 [1973]; Comment, Professional Responsibility-Contingent Fees in Domestic Relations Actions: Equal Freedom to Contract for the Domestic Relations Bar, 62 NC L Rev 381, 387 [1984]; cf., Restatement [Second] of Contracts § 190, comment c; Restatement [Third] of Law Governing Lawyers § 47, comment d [Tent Draft No. 4 1991]). Another often expressed policy reason to preclude contingent fees in matrimonial actions is that they are not necessary. Since the court may award attorney’s fees to a nonmonied spouse (Domestic Relations Law § 237; see, e.g., Newman v Freitas, 129 Cal 283, 292, 61 P 907, 910 [1900]; McDearmon v Gordon & Gremillion, 247 Ark 318, 445 SW2d 488 [1969]) any party should be able to retain counsel.
The question whether the PFA violates the Code of Professional Responsibility requires analysis of whether the payment or amount was "contingent” on the result. Plaintiff correctly notes that DR 2-106 (C) (2) does not use the term "contingent fee”, which is used in DR 2-106 (C) (1) banning those fees in criminal cases. Clearly the fee here could not be called a "contingent fee” in its traditional sense. The Code of Professional Responsibility does not define "contingent.” One common definition of a "contingent fee” between attorney and client is " 'an agreement, express or implied, for legal services * * * under which compensation, contingent in whole or in part upon the successful accomplishment or disposition of the subject matter of the agreement, is to be in an amount which either is fixed or is to be determined under a formula.’ ” (New England Tel. & Tel. Co. v Board of Assessors, 392 Mass 865, 870-871, 468 NE2d 263, 266-267 [1984].) That is consistent with the definition in Black’s Law Dictionary 553 (5th ed 1979). The usual meaning of a "contingent fee” is that the attorney will be paid only if the case is won (e.g., Pocius v Halvorsen, 30 Ill 2d 73, 78, 195 NE2d 137, 139 [1963]; City of Burlington v Dague, 505 US 557 [1992]). There is no doubt that by its terms the PFA was a fixed, binding agreement that did not turn on *771 the outcome of the case or on the amount received by plaintiff. The attorney had no risk that the fee would not be paid if the case was lost.
Plaintiff suggests that because the first payment of the fee was to be paid from a specified equitable distribution payment it was "contingent” for payment on the completion of the case. In Shanks v Kilgore (589 SW2d 318, 321 [Mo App 1979]) the court found that since the $60,000 fee was to be paid partially from each equitable distribution installment it was based on a prohibited contingency, the receipt of payment. This court rejects that analysis; once the fee has been firmly fixed the uncertainty of actual payment does not make it invalid. It has long been an accepted practice in this jurisdiction, even where the entire fee is fixed at an hourly rate, for counsel to agree to await payment until the ultimate resolution of the case. Neither the fee nor the obligation to pay it turns on the outcome. Only the timing of the payment is uncertain. Bar Ethics Committees appear to support that view. (Cf., Philadelphia Bar Assn., Professional Guidance Commn., No. 90-15, 1990 WL 303931.) The court cannot conclude that such a provision makes a fixed fee into a "contingent fee.”
A more troubling question is presented because the language of DR 6-102 (C) (2) uses the term "contingent * * * upon the * * * amount of * * * equitable distribution.” "Contingent” means "[p]ossible, but not assured; doubtful or uncertain; conditional upon the occurrence of some future event which is itself uncertain, or questionable.” (Black’s Law Dictionary 290 [5th ed 1979].) The PFA based the fee on "the results achieved.” The Code of Professional Responsibility, following well-established New York law (e.g., Matter of Freeman, 34 NY2d 1, 9 [1974]), provides that one of the "[fjactors to be considered as guides in determining the reasonableness of a fee * * * [is] the amount involved and the results obtained.” (DR 2-106 [B] [4]; 22 NYCRR 1200.11 [b] [4].) Thus the question before this court becomes whether the use of the "results obtained” to set the final fee necessarily makes the fee "contingent” on the ultimate amount. The answer to that question has divided the courts which have considered it.
In Head v Head (66 Md App 655, 668, 505 A2d 868, 874-875 [1986]) the court found no violation of DR 2-106 (C) (2). In that case there had been a judicial determination by the lower court of a legal fee which included a "bonus” based on the *772 result.[4] The fee was held not to be contingent because "the fee was not directly related by percentage or formula to the amount recovered or protected.” The court supported its conclusion by noting that the fee did not serve the usual purpose of a contingent fee since the parties could afford counsel and no res was created since the party involved was the monied spouse. In In re Malec (205 Ill App 3d 273, 288, 562 NE2d 1010, 1020-1021 [1990], appeal denied sub nom. Malec v Zurla, 136 Ill 2d 545, 567 NE2d 333 [1991]), the court simply agreed with Head’s conclusion and observed that a fee to be determined based on performance would not be contingent. However, in Malee the fee arrangement was actually invalidated as "contingent” because a $1 million bonus was tied to counsel’s achievement of a specific result. The court in Eckell v Wilson (409 Pa Super 132, 597 A2d 696 [1991], appeal denied 530 Pa 643, 607 A2d 253 [1992]), after reviewing the cases, concluded that a fee based on a minimum hourly rate with the final fee to be based on the reasonable value of the services, including whether a favorable result was reached, is not a fee grounded on a prohibited contingency. The court reasoned that since the attorney would be paid regardless of the outcome, the risk of nonpayment in case of an unfavorable result, characteristic of a contingent fee, was missing. The court found that the agreement was the equivalent of a quantum meruit fee based on the factors permitted by the Rules of Practice.[5]
*773 On the other hand a number of courts have found "result” based fees to be prohibited contingencies. In Salerno v Salerno (241 NJ Super 536, 575 A2d 532 [1990], supra), the retainer provided for hourly billing and a final fee "premium” based, inter alla, on "the result accomplished”. The court held that a charge based on a percentage of the equitable distribution to the client clearly has all the aspects of a contingent fee. Although a fee contingent on the amount of equitable distribution was held valid under the New Jersey Rules, which are based on the Model Rules, the fee was invalidated for violation of rule 1.5 (c) which requires that the agreement be in writing and set the exact percentage of recovery which the attorney sought as a fee.[6]
In State ex rel. Oklahoma Bar Assn. v Fagin (848 P2d 11 [Okla 1992], supra), the court imposed professional discipline on an attorney for charging a fee in a divorce case based on the result. The court concluded that any fee which gives an attorney an interest in seeing that there is no reconciliation is contingent on the result. The court reasoned that, since rule 1.5 (d) (1) (see, n 5, supra) prohibits "any type of fee which has some aspect of a contingency involved,” any enhancement of a fee based on a favorable result is contingent (848 P2d, at 14, supra). The court specifically rejected Eckell v Wilson (supra), since in its view it is irrelevant to analysis under the Rules whether a fee is fixed by a formula or percentage; a fee is prohibited if it is contingent "in any way” on the result.
This court concludes that where the parties enter into a fee agreement prior to the completion of the matter where a legal fee turns on the "result obtained,” that of necessity is a fee based on a prohibited contingency of the amount of the award. EC 2-20, the theoretical basis for DR 2-106 (C) (2), clearly establishes that the conflict between prohibited contingencies and the list of factors in setting a fee must be resolved in favor of prohibiting the arrangement. In New York fault is *774 still generally a condition precedent to a divorce (Domestic Relations Law § 170) and there is a strong public policy supporting reconciliation. The Code of Professional Responsibility bars an attorney from having a self-interest in the proceeding. Further, the Code of Professional Responsibility protects the client from possible overreaching by the attorney. The court also notes that the language of DR 2-106 (C) (2) is even stronger than that in DR 2-106 (C) (1) which bars contingent fees in criminal cases. An attorney in a matrimonial case may not "charge or collect” "any fee” "contingent upon * * * the amount of * * * equitable distribution.” The court finds that this analysis compels the conclusion that had the fee agreement provided for a final fee based on all of the DR 2-106 (B) factors, it would have been invalid. A similar result would be required by the new "Matrimonial Rules” (22 NYCRR 1400.3) if the retainer were entered into after November 30, 1993. In those cases DR 2-106 (C) (2) still applies. Further under the new rule all of the fee factors must be spelled out in detail. The inclusion of "the results obtained” as a factor would therefore still result in a fee invalid under DR 2-106 (C) (2).
Defendant argues that this case differs from those where "bonuses” or "tips” have been invalidated because the PFA was not referred to in the retainer but was only agreed to after the case was "completed” and there was a "final resolution of the matrimonial matter.” Defendant notes that plaintiff had also executed the documents necessary for an uncontested divorce prior to signing the PFA. Plaintiff, however, relies on the undisputed fact that on August 18, when the settlement agreement, other documents and the PFA were signed by her, her husband had not yet executed the settlement agreement, nor had husband’s counsel concluded that the other documents were "in acceptable form” as was required. Therefore, she argues, there was no certainty that the agreement would be signed by her husband in the form submitted, or that all of the issues were actually resolved.
This court’s experience is that, despite the sense of counsel that a deal has been struck and that a separation agreement is final, there are often last minute disagreements and proposed changes by the client. This matter was obviously not final, at least until signed by plaintiff’s then husband. That uncertainty meant that, at the time of its execution, the PFA was contingent; it was contingent on the husband’s execution of the separation agreement and his counsel’s approval of *775 certain documents. If the husband had raised any issues, defendant’s self-interest in the result would have created the conflicted loyalty to the client that DR 2-106 (C) (2) was designed to prevent. Defendant counters by claiming that the PFA is for a fixed "unconditional” fee, final and binding on plaintiff. Yet that position is belied by the use of the phrase "results achieved” in the PFA. If the husband did not sign or had demanded substantive changes there would have been no "results.” Defendant’s papers continuously justify the fee by the size of the equitable distribution settlement. Of course, a $2,000,000 "bonus” for an unexecuted separation agreement, with no results, would be patently excessive (see, DR 2-106 [A]; 22 NYCRR 1200.11 [a]) warranting invalidation of the PFA for that reason alone. Thus, this court concludes that the PFA when executed by plaintiff was invalid pursuant to DR 2-106 (C) (2). Of course, this decision does not express any view on the propriety of a truly voluntary agreement for a "bonus” to counsel entered into after completion of the entire proceeding.
Plaintiff concedes that in light of the invalidity of the PFA defendant would be entitled to the $41,000 of her time charges which she waived. This court agrees.
Plaintiff’s motion for summary judgment on the fifth cause of action is granted. The counterclaim is dismissed.

. The retainer was originally between plaintiff and defendant’s former law firm. It was continued by oral agreement when defendant left that firm in January 1993 and continued to represent plaintiff in her own practice.

. At the time the PFA was signed the parties here also executed an attorney’s confidentiality agreement, which paralleled the confidentiality portion of the separation agreement, to which counsel was not a party. Plaintiff’s argument that the confidentiality agreement violates DR 4-101 (C) (22 NYCRR 1200.19) is not germane to the cause of action involved here.

. These rules are consistent with the older cases throughout the country (e.g., Opperud v Bussey, 172 Okla 625, 46 P2d 319, 324 [1935]; Barelli v Levin, 144 Ind App 576, 247 NE2d 847 [1969]; Sobieski v Maresco, 143 So 2d 62 [Fla App 1962]; McConnell v McConnell, 98 Ark 193, 136 SW 931 [1911]).

. Since the fee involved the attorney’s own client it did not turn on cases which have discussed whether "the result obtained” may be used by the court in a fee shifting setting (see, e.g., Valparaiso Bank & Trust Co. v Sims, 343 So 2d 967, 971-972 [Fla Dist Ct App 1977], cert denied 353 So 2d 678 [Fla 1977]; Flynn v Flynn, 338 NW2d 295, 296 [SD 1983]; State ex rel. Oklahoma Bar Assn. v Fagin, 848 P2d 11, 15 [Okla 1992], and cases cited therein). Clearly in New York the "result obtained” is one of the factors that the court must take into account when making a fee award to be paid by the other side under Domestic Relations Law § 237 (Price v Price, 115 AD2d 530).

. At the relevant time Pennsylvania attorneys were governed by the Code of Professional Responsibility, which was similar to the New York version. Thereafter Pennsylvania adopted the Model Rules of Professional Conduct, as have many other States. Model Rules of Professional Conduct rule 1.5 (a) uses the same list of permitted factors in determining the reasonableness of a fee as does Code of Professional Responsibility DR 2-106 (A). Fees contingent "upon the amount of alimony or support or property settlement in lieu thereof” are prohibited. (Model Rules of Professional Conduct rule 1.5 [d] [1] [emphasis added]). At least one State has held that Model Rules of Professional Conduct rule 1.5 (d) (1) does not bar contingent *773 fees as to equitable distribution since that is not in lieu of support (Salerno v Salerno, 241 NJ Super 536, 539, 575 A2d 532, 534 [1990]; cf., In re Cooper, 81 NC App 27, 39-40, 344 SE2d 27, 35 [1986]; but see, Wolfram, Modern Legal Ethics § 9.4.4, at 540).

. That rule is similar to 22 NYCRR 1400.3, which applies to retainers in matrimonial actions entered into after November 30, 1993; retainers now must be in writing and set forth "in plain language the terms of compensation.” The purpose of the new rule is to prohibit result based fees. (See, Report, Committee to Examine Lawyer Conduct in Matrimonial Actions, at 13 [1993].)